## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **CARLA LONGMIRE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIVIL ACTION 16-0025-WS-M** |
| | ) |
| **CITY OF MOBILE, ALABAMA,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This matter comes before the Court on Defendant Donald Dees' Motion for Summary

Judgment (doc. 12).  The Motion has been briefed and is now ripe for disposition.[1]

**I.   Factual and Procedural Background.**

 *A. Nature of the Case.*

Plaintiff, Carla Longmire, was employed by the City of Mobile Police Department as a

Police Captain.  In this capacity, Longmire was a Mobile County Merit System Employee whose

employment was subject to, and governed by, the rules of the Mobile County Personnel Board.

---

[1] Although the parties have collectively submitted nearly 400 pages of exhibits in support of their respective positions, neither side submitted courtesy copies to the Court as required by the Local Rules and the Rule 16(b) Scheduling Order.  *See* Civil L.R. 7(g) ("If a party's exhibits in support of, or in opposition to, a motion exceed fifty (50) pages in the aggregate, that party must submit a courtesy copy to chambers."); doc. 8, ¶ 14(c) (similar). Despite this omission, and in the interest of not delaying adjudication of the Motion, the Court in its discretion will consider the Motion, briefs and exhibits in their present form, even without the required courtesy copies.  That said, to a large extent, the parties (and particularly plaintiff) neither cite to specific portions of their exhibits nor explain how they contend those exhibits bolster their summary judgment arguments.  This omission is at the parties' peril.  Courts have frowned on the all-too-prevalent litigation practice of stuffing a record with exhibits and leaving it to the court to sift through an undifferentiated mass of uncited materials in search of facts that might help one side or the other.  The Federal Rules of Civil Procedure clarify that "[t]he court need consider only the cited materials."  Rule 56(c)(3), Fed.R.Civ.P.  The Court exercises its discretion not to consider uncited exhibits and portions of exhibits in the summary judgment record.

(Complaint, ¶¶ 1, 7.)  She brings this action against various defendants alleging due process violations in connection with certain disciplinary proceedings in 2013 and 2014 through which Longmire was demoted from the rank of Captain to that of Lieutenant.  One of those defendants is Donald Dees, the Personnel Director for the Mobile County Personnel Board.  (*Id.*, ¶ 5.)  Also named as a defendant is the City of Mobile, Alabama, which is alleged to serve as the "Appointing Authority" for Mobile County Merit System Employees.  (*Id.*, ¶ 2.)  Yet another named defendant is the Mobile County Personnel Board, which plaintiff says "is charged with adhering to the Rules and Regulations of the Mobile County Personnel Board."  (*Id.*, ¶ 6.)

The Complaint alleges that defendants violated the Fourteenth Amendment due process clause "[b]y demoting Plaintiff without following mandatory and non-discretionary Mobile County Merit System due process procedures," and thereby "depriv[ing] the Plaintiff of her property rights interest in her job as a county merit system employee without due process of law."  (*Id.*, ¶ 13.)  The Complaint expounds on the theory animating this claim as follows: "The provisions of MCPBR 14.3(a) mandated certain prescribed timeframes and due process procedures.  The Defendants knowingly failed to abide by them and continue to do so even through the date of this filing."  (*Id.*, ¶ 24.)  With regard to defendant Dees, the Complaint specifically alleges that he "was charged with ensuring the provisions of Rule 14.3(a) were complied with by the Appointing Authority and he willfully neglected and failed to discharge this mandated obligation."  (*Id.*, ¶ 23.)  In a separate cause of action, the Complaint alleges that defendants' conduct (as described above) "unlawfully deprived Longmire of her right to due process guaranteed under the Alabama Constitution of 1901, Article 1, §§ 6, 13, 22, among other applicable sections."  (*Id.*, ¶ 27.)  With respect to both causes of action, the Complaint alleges that "Dees should be held accountable for compensatory and punitive damages; and such other damages as reasonably foreseeable."  (*Id.*, ¶¶ 25, 30.)[2]  The Complaint also seeks declaratory and injunctive relief against all defendants, including specifically Dees.  (*Id.* at 13-14, ¶¶ d, j.)

---

[2]      To be clear, the only allegations of wrongful conduct ascribed to Dees in the Complaint are as follows: (i) "[o]n December 16, 2013, among dates thereafter, Personnel Director Dees took actions against the Statutory and Constitutional rights of the Plaintiff that a reasonable government official in same or similar circumstances would not have taken" (*id.*, ¶ 6); (ii) the other defendants and "Dees proceeded to deprive Plaintiff Longmire of her property rights interest while they all acted under color of law" (*id.*, ¶ 8); and (iii) "[t]he Personnel Director was charged with ensuring the provisions of Rule 14.3(a) were complied with by the (Continued)

From the face of the Complaint, it is evident that Personnel Board Rule 14.3(a) is of central importance to Longmire's claims.  That rule provides as follows:

> "Before any permanent employee is dismissed, suspended or demoted for cause, the Appointing Authority or his designated representative shall afford the employee due process in the form of a pre-disciplinary hearing.  Written notice of the reasons for termination, suspension or demotion must be given to the employee at least twenty-four (24) hours prior to the pre-disciplinary hearing, at which time the employee must be given the opportunity to respond orally and/or in writing to the charges made before the official, or the designated representative of the official, charged with the responsibility of making the disciplinary decision. The pre-disciplinary hearing must be held within seven (7) days after written notice to the employee.  The determination as a result of the pre-disciplinary hearing must be communicated to the employee in writing within fourteen (14) days of the hearing.  Circumstances that prevent adherence to these timeframes must have approval of the Director.  The dismissal, suspension or demotion of an employee by an Appointing Authority without having first accorded the employee a pre-disciplinary hearing in accordance with this Rule shall be void and of no force and effect, and shall not be recognized by the Board, except in extraordinary situations as hereinafter specified."

(Doc. 13-3, at 54.)  Also significant is Personnel Board Rule 14.5, which provides that where an employee appeals from a demotion, "[t]he Director shall within seven (7) calendar days after receipt of the appeal, investigate to insure proper procedure was followed as set out in Rule 14.3 and 14.4 and report said appeal to the Board."  (*Id.* at 55.)

   **B.    *The Disciplinary Proceedings.*[3]**

_____

Appointing Authority and he willfully neglected and failed to discharge this mandated obligation" (*id.*, ¶ 23).  Nowhere else does the Complaint identify or elaborate on any wrongdoing attributed to Dees.

   [3]    The facts and circumstances relevant to defendant Dees' Rule 56 Motion are largely uncontested for summary judgment purposes.  Nonetheless, to the extent that there is divergence in the facts on which the parties rely, the Court remains mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party.  *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007).  Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in her favor.  Also, federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.").  Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept[s] (Continued)

On December 10, 2013, a "Disciplinary Trial Board Notice" was delivered by the Mobile Police Department to Longmire.  (Doc. 13-4, at 1.)  This Notice reflected that administrative disciplinary action was contemplated against Longmire, and that a non-adversary Administrative Trial Board Hearing would be convened on December 16, 2013 at 9:00 a.m., at which time Longmire would be given an opportunity to enter a plea and to respond verbally to the charges against her.  The December 10 Notice indicated that Longmire was entitled to have legal counsel or a representative present at the hearing as an observer, and that she may submit a list of witnesses to testify on her behalf within three working days.  The December 10 Notice also confirmed Longmire's right to appeal from any discipline that might be imposed.  (*Id.*)  Longmire acknowledges that she received this Notice on or about December 10, 2013.  (Longmire Decl. (doc. 18-1), ¶ 4.)

The December 10 Notice specified two charges against Longmire, both for "conduct unbecoming an employee in the public service," in violation of Personnel Board Rule 14.2(c).  (Doc. 13-4, at 2-3.)  Charge I was documented in the Notice as follows:

> "That during the month of September 2013, Captain Longmire engaged in an intimate relationship with a subordinate, which was under her command.  The investigation revealed that on several occasions during the aforementioned month Captain Longmire met with the subordinate at her apartment during duty hours and on at least one occasion they engaged in sexual intercourse."

(*Id.* at 2.)  Charge II recited the following specification:

> "That as the commander over 3rd Precinct, Captain Longmire failed to provide proper direction, oversight and guidance over her subordinate, in that she allowed Officer Latham to remove himself from service, by logging off his MDT, during his assigned shift to meet with her at her apartment."

(*Id.* at 3.)

The record before the Court confirms that a hearing was, in fact, convened to address the charges against Longmire on December 16, 2013.  Although the parties' summary judgment briefs recite precious few details of what transpired during that hearing, Dees does show that Longmire admitted certain factual allegations relating to those charges during the December 16 hearing.  In particular, Longmire admitted during that hearing that Officer Latham had been at

---

[Longmire's] version of the facts drawing all justifiable inferences in [her] favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

her apartment when he was on duty on September 6, 2013, and that she had engaged in sexual relations with Officer Latham on one occasion when he was on duty.  (Doc. 13-6, at 63-64.) There was also evidence that, during the December 16 hearing, Longmire "said I am guilty" and specifically admitted guilt as to both the unbecoming conduct charge and the failure to supervise charge.  (*Id.* at 64-65.)[4]

On December 17, 2013, the City of Mobile, by and through Mayor William S. Stimpson, signed an Official Notice of Demotion.  (Doc. 13-5.)  The December 17 Notice confirmed that a non-adversary Trial Board had been convened on December 16, 2013 to hear evidence concerning the charges against Longmire; and reflected that the Mayor concurred with the Trial Board's recommendation that Longmire be demoted to the position of Police Lieutenant.  (*Id.*)

Longmire appealed the decision, as authorized by the rules of the Mobile County Personnel Board.  In accordance with that appeal, defendant Dees noted the Personnel Board's receipt of her notice of appeal and made certain determinations about the underlying procedures. (Dees Aff. (doc. 13-1), ¶ 4.)  Specifically, Dees confirmed that Longmire had been furnished

---

[4]      The transcript of the December 16 hearing furnished by Longmire includes the following pertinent excerpts:

"KENNEDY:  … when they asked you did you have sexual intercourse with [Officer Latham] while he was on duty, and you stated one time, is that a true statement?
"LONGMIRE: Right, that's a true statement.
"KENNEDY:  Okay. So there's no question that you know that you did have sex with him while he was on duty.
"LONGMIRE: Right.
                    *                    *                    *
"KENNEDY:  … you want to plead guilty to the first charge?
"LONGMIRE: Yes.
                    *                    *                    *
"LAWSON:   … are you saying that allowing him to come to your private dwelling, your place of domicile, while he was on duty is proper supervision?
"LONGMIRE: No, sir.
                    *                    *                    *
"KENNEDY:  Are you changing your plea to guilty then?
"LONGMIRE: Yes.
"KENNEDY:  So you are pleading guilty on both charges?
"LONGMIRE: Yes."

(Doc. 18, Exh. 2, at 24, 31, 40.)

with written notice of the pre-disciplinary hearing at least 24 hours in advance, that the notice set forth the factual allegations underlying the contemplated disciplinary action, that Longmire was given an opportunity to respond at the hearing, that Mayor Stimpson demoted Longmire following the hearing, that Longmire had been given written notice of the demotion, and that her notice of appeal was timely. (*Id.*) After confirming these circumstances, Dees scheduled the matter for a *de novo* hearing before the Personnel Board. (*Id.*)

Longmire's appeal was heard by the Personnel Board on March 6, 2014, with Longmire represented at the appeals hearing by counsel of her choosing. (*Id.*, ¶ 5.) By and through counsel, Longmire cross-examined witnesses and presented arguments; however, she elected not to testify or present evidence of her own. (*Id.*) On March 20, 2014, the Personnel Board issued a five-page written order, concluding that the Appointing Authority had met its burden of proof, that Longmire was guilty of all charges, and that upon *de novo* review demotion was the appropriate sanction. (Doc. 13-17, at 4.) On that basis, the Personnel Board affirmed Longmire's demotion. (*Id.* at 4-5.)

As was her right, Longmire appealed the Personnel Board's decision to the Circuit Court of Mobile County, Alabama. (Dees Aff., ¶ 6.) Upon the filing of her appeal, Dees assembled and transmitted the Personnel Board record to the Circuit Court. (*Id.*) On August 7, 2015, the Mobile Circuit Court entered an order granting summary judgment in favor of the City of Mobile and against Longmire. (Doc. 13-8.) The Circuit Court expressly concluded that (i) "there is substantial evidence to support the factual findings and the order of the Mobile County Personnel Board;" (ii) "the Personnel Board's action was not 'unlawful' or 'unreasonable' within the meaning of Local Act 470;" (iii) "all rules and timely notices were adhered to;" and (iv) the Personnel Board's demotion order was affirmed. (*Id.* at 8-9.) Longmire's ensuing appeal to the Alabama Court of Civil Appeals was unsuccessful, as the appellate court affirmed without opinion the Circuit Court's decision on April 22, 2016. (Doc. 13-9.)

In her ensuing § 1983 lawsuit against Dees, the Personnel Board and others, Longmire posits that the procedures followed by the Mobile Police Department and the Personnel Board were deficient in numerous respects. For example, she complains that the December 10 Notice did not notify her that a "pre-disciplinary hearing" (as opposed to some other kind of hearing) would be held. (Longmire Decl., ¶ 4.) Longmire further maintains that the December 10 Notice was defective in that it "stated that only a 'verbal statement' would be allowed" (without

informing her that she could submit a written statement), failed to indicate that "a 'verbal or written statement' would be permitted at [her] election," and did not caution her that "a verbal statement will subject [her] to cross-examination on a wide field of topics or … trigger wide-range [*sic*] questioning by higher ranked officers." (*Id.*, ¶¶ 5-7.)  According to Longmire, the December 16 hearing was procedurally deficient because she was not allowed to be present during adverse witnesses' testimony, she was not furnished the evidence or statements of those witnesses, she was never given a transcript of the December 16 hearing, there is no evidence that Mayor Stimpson actually signed her demotion letter, she was not afforded an opportunity to present rebuttal witnesses, and she was questioned by the panel in an adversarial manner. (*Id.*, ¶¶ 8-13.)  Longmire further complains that she was never given training concerning Mobile County Personnel Board rules, that Police Chief James Barber purportedly recommended her demotion even though he did not attend the December 16 hearing, and that Longmire never appeared at a "pre-disciplinary hearing" conducted before Mayor Stimpson's "designated representative." (*Id.*, ¶¶ 15-20.)[5]

## II.    Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact

---

[5]       Plaintiff's claims against Dees focus on his alleged failure to determine that the Police Department's pre-disciplinary hearing procedure diverged from Personnel Board rules. That said, she also asserts dissatisfaction with defendants relating to her post-disciplinary hearing before the Personnel Board.  Specifically, Longmire objects that she was never informed of the rules for appealing her demotion, that she was denied the right to cross-examine Mayor Stimpson, that the Personnel Board refused to allow Mayor Stimpson to testify at the hearing, that defendant Dees never testified or certified his compliance with Personnel Board Rules 14.3(a) and 14.5 at the March 6 hearing, that she was not allowed to call defendant Dees to testify at the March 6 hearing, and that she was not granted a continuance of the Personnel Board hearing to seek a writ of mandamus to force compliance with Personnel Board rules. (*Id.*, ¶¶ 22-30.)  Longmire maintains that she notified the Personnel Board of numerous purported due process violations in connection with these hearings, yet no remedial action was taken. (*Id.*, ¶ 32-33.)  The alleged deficiencies relating to the post-deprivation hearing do not appear to form the factual or legal predicate of any claims asserted by Longmire against defendant Dees in the Complaint.

that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

## III.  Analysis.

Defendant Dees now moves for summary judgment on grounds of qualified immunity and official-capacity immunity. In his Rule 56 Motion, Dees construes Longmire's claims against him as being that he "improperly investigated whether the Police Department's pre-disciplinary procedure followed Personnel Board Rules 14.3 and 14.4, and that a proper investigation would have revealed that Longmire's pre-disciplinary hearing deficient and reported the defect to the Board." (Doc. 13, at 10.)[6] Dees' position is that even if the procedures utilized in Longmire's case did not comport with Rules 14.3 and 14.4, "he would still be entitled to dismissal in his individual capacity on the basis of qualified immunity." (*Id.* at 11.) And Dees further asserts that the claims against him in his official capacity are due to be dismissed as

---

[6]      This appears to be a fair characterization of Longmire's theory of liability with respect to Dees. After all, the Complaint alleges that "[t]he Personnel Director was charged with ensuring the provisions of Rule 14.3(a) were complied with by the Appointing Authority and he willfully neglected and failed to discharge this mandated obligation. The Personnel Director failed to create and provide the Appointing Authorities [*sic*] such approved documents respecting pre-disciplinary hearings." (Complaint, ¶ 23.)

redundant of plaintiff's claims against the Personnel Board.  Each of these issues will be addressed in turn.[7]

>    ***A.      Dees' Qualified Immunity Defense as to Individual Capacity Claims.***
>
>    ***1.      Qualified Immunity Standard.***

When a government official such as Dees is sued in his individual capacity for money damages for alleged constitutional violations, he may raise an affirmative defense of qualified immunity.  *See Swint v. City of Wadley, Ala.*, 51 F.3d 988, 994 (11th Cir. 1995).  The essence of this defense is that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct 2727, 73 L.Ed.2d 396 (1982); *see also Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1327 (11th Cir. 2006) ("Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.") (citation and brackets omitted).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citations omitted).  As such, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

"To be entitled to qualified immunity, the defendant must prove that he was acting within the scope of his discretionary authority" when the allegedly wrongful acts occurred.  *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006).  If the defendant meets this burden of showing a discretionary function, then "a plaintiff seeking to overcome the defendant's privilege of qualified immunity must show (1) that the officer violated her federal constitutional or statutory rights, and (2) that those rights were clearly established at the time the officer acted."

---

[7]     After the close of briefing on the Motion for Summary Judgment, plaintiff filed a "Motion for Leave to File Surrebuttal" (doc. 23).  Although the filing of sur-replies is disfavored, particularly where as here the sur-reply largely reploughs ground that was or could have been covered in previous filings, the Court in its discretion **grants** the Motion and has considered Longmire's sur-reply appended to said Motion.

*Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008); *see also Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).[8]

## 2.   *Discretionary Function.*

"To even be potentially eligible for summary judgment due to qualified immunity, the official must have been engaged in a 'discretionary function' when he performed the acts of which the plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004) (citations omitted). For purposes of federal qualified immunity analysis, a defendant acts within his discretionary authority when "his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (internal quotation marks omitted). Through this inquiry, then, "[w]e ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman*, 370 F.3d at 1265. For purposes of the discretionary function analysis, "[t]he inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act," but instead "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert Int'l*, 157 F.3d at 1282 (internal quotation marks omitted).

Again, Longmire's claim is that Dees failed to perform his duties under Personnel Board Rule 14.5 by investigating within seven days after receipt of Longmire's appeal from Mayor Stimpson's demotion decision to insure proper procedures were followed as set out in Rule 14.3. This is a discretionary function for qualified immunity purposes. After all, "discretionary function" is a term of art in the qualified immunity context. Circuit precedent unambiguously frames the discretionary function inquiry as being whether the acts in question "are of a type that fell within the employee's job responsibilities." *Holloman*, 370 F.3d at 1265; *see also Holmes v. Georgia ex rel. Strickland*, 503 Fed.Appx. 870, 874 (11th Cir. Jan. 15, 2013) ("Regarding

---

[8]    Notably, the reach of qualified immunity as an affirmative defense is confined to claims for monetary damages. *See, e.g., Ratliff v. DeKalb County, Ga.*, 62 F.3d 338, 340 n.4 (11th Cir. 1995) ("Because qualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions, qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief."). Thus, Dees' qualified immunity defense does not and cannot insulate him from Longmire's claims for non-monetary relief.

discretionary functions, the inquiry concerns whether the acts in question are of a type that fell within the defendant's job responsibilities, and asks whether the defendant was performing a legitimate job-related function through means that were within his or her power to utilize.").  It is undisputed that Dees' job responsibilities included investigation of procedures implemented at pre-disciplinary hearings when a disciplined employee appealed to the Personnel Board.  There can be no reasonable question on this record that Dees' challenged conduct in this action relates to legitimate job-related functions that he was performing through means that he was empowered to utilize.  Therefore, the Court readily concludes that Dees has met his burden of showing that he was engaged in a discretionary function when he performed the acts of which Longmire complains.

In so concluding, the Court has considered and rejected plaintiff's argument that Dees' duties under Personnel Board Rule 14.5 represented a "mandatory function" rather than a discretionary function, and that they therefore lie beyond the reach of qualified immunity protection.[9]  Such an argument fundamentally misunderstands the "discretionary function" concept.  In the qualified immunity context, the issue for "discretionary function" is not whether the defendant is exercising independent judgment or whether the defendant was authorized to violate one's constitutional rights, but is rather whether the conduct in question lies within the defendant's job responsibilities and whether he was performing such duties through means within his power to utilize.  *See Holloman*, 370 F.3d at 1265 ("In many areas other than qualified immunity, a 'discretionary function' is defined as an activity requiring the exercise of independent judgment, and is the opposite of a 'ministerial task.' … In the qualified immunity context, however, we appear to have abandoned this 'discretionary function/ministerial task' dichotomy. … [F]or purposes of qualified immunity, a governmental actor engaged in purely ministerial activities can nevertheless be performing a discretionary function."); *see also Shaw v. Hall*, 2016 WL 1248870, *3 (M.D. Ga. Mar. 29, 2016) ("Plaintiff seems to misunderstand the

---

[9]       In her summary judgment brief, plaintiff accuses Dees of "intentionally maliciously confusing his discretionary responsibilities with his non-discretionary responsibilities." (Doc. 18, at 2.)  She balks that Personnel Board Rules "mandate that certain procedural requirements be *strictly* followed … without any discretion to deviate," and that compliance with same was "a mandatory function of the Personnel Director, Mr. Dees." (*Id.* at 4-5.)  Plaintiff also posits that "there existed no discretion for him to act" and that "[t]he Rules uses [*sic*] the words 'must' and 'shall', which negates [*sic*] discretion on its [*sic*] face." (*Id.* at 8.)

discretionary authority analysis for qualified immunity. … For purposes of the qualified immunity analysis, the court does not focus on whether the acts in question involved the exercise of actual discretion.") (internal marks omitted).  Plaintiff offers no colorable arguments or facts to rebut defendant Dees' showing that his allegedly violative conduct lies squarely within the boundaries of a "discretionary function" as that term is applied in the qualified immunity context.  The Court thus readily finds that Dees has met his burden of showing that Longmire seeks to hold him liable for discretionary functions he was performing as Personnel Director for the Mobile County Personnel Board.

### 3.    *Violation of a Clearly Established Constitutional Right.*

Dees having met his burden of showing that he was performing discretionary functions, he is entitled to qualified immunity unless Longmire shows both that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman*, 370 F.3d at 1264.  For a right to be clearly established, "pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated reasonable government agent that what defendant is doing violates federal law in the circumstances." *Lassiter v. Alabama A & M University*, 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  In making this inquiry, "the salient question … is whether the state of the law … gave the [defendants] fair warning that their alleged [conduct] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

As a threshold matter, the parties devote considerable attention in their summary judgment filings to discussing actions that Dees did not take and decisions that he did not make.  For example, plaintiff maintains that "Longmire was not permitted to remain in the [December 16 Hearing] during the testimony of witnesses" and that "Longmire was not permitted to call the witnesses she needed to pursue her appeal."  (Doc. 18, at 5-6.)  But she presents not a shred of evidence that Dees had any control, authority or direct participation in these events.  As to the December 16 Hearing, Longmire admits that the Police Department's "legal advisor was the person actually in charge and directing the proceedings."  (Longmire Decl. (doc. 18-1), ¶ 14.)  Longmire further acknowledges that, at the March 6 hearing in which she appealed her

demotion, it was the Personnel Board's lawyer (and not Dees) who denied her the right to call certain witnesses.  (*Id.*, ¶¶ 26, 29.)  For his part, Dees indicates that he attended the March 6 hearing, but that he "did not participate in the hearing or the decision."  (Dees Aff. (doc. 13-1), ¶ 5.)  There is thus no evidence that Dees' conduct or decisions resulted in Longmire's exclusion from the hearing room during portions of the December 16 hearing, or her inability to call witnesses during the March 6 hearing.  In short, the complained-of infractions may or may not be of constitutional import, but they do not implicate defendant Dees.

As discussed *supra*, plaintiff's pleadings make clear that Longmire's claims against Dees (as opposed to the other defendants) are based on his alleged noncompliance with Personnel Board Rule 14.5's requirement that he investigate to insure the proper procedure was followed in a pre-disciplinary hearing in connection with Longmire's subsequent appeal.  Plaintiff's fundamental problem with respect to Dees' Motion for Summary Judgment is that, in order to avoid the bar of qualified immunity, she must show that Dees' purported failure to conduct a Rule 14.5 investigation violated clearly established federal constitutional or statutory rights.  She has not done so.

Insofar as Longmire may be contending that any violations of Mobile County Board Personnel Board rules are necessarily actionable under § 1983, well-settled law is to the contrary. Indeed, authority is legion for the proposition that "[t]o succeed, a section 1983 plaintiff must show that the laws or constitution of the *United States* were violated by state action." *Conlogue v. Shinbaum*, 949 F.2d 378, 381 n.5 (11ᵗʰ Cir. 1991).[10]  Thus, Longmire's assertions that Dees failed to satisfy Personnel Board Rule 14.5 are not cognizable under § 1983 absent a showing that violation of Rule 14.5 equates to a constitutional deprivation.  One does not inexorably lead to the other.  "Of course, the law is well established that the mere failure to follow state procedures does not necessarily rise to the level of a violation of federal procedural due process rights." *Maddox v. Stephens*, 727 F.3d 1109, 1124 n.15 (11ᵗʰ Cir. 2013); *see also First Assembly*

---

[10]     *See also Myers v. Bowman*, 713 F.3d 1319, 1329 (11ᵗʰ Cir. 2013) ("A successful section 1983 action requires that the plaintiff show [he] was ***deprived of a federal right*** by a person acting under color of state law.") (emphasis added and citation omitted); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11ᵗʰ Cir. 2011) ("[t]o prevail on a claim under § 1983, a plaintiff must demonstrate … that the defendant deprived [him] of ***a right secured under the Constitution or federal law***") (emphasis added and citation omitted).

-13-

*of God of Naples, Florida, Inc. v. Collier Count, Fla.*, 20 F.3d 419, 422 (11th Cir. 1994) ("Significantly, the violation of a state statute mandating procedure is not the equivalent of a federal Constitutional violation."); *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1528 (11th Cir. 1987) ("[W]e emphasize that the violation of a state statute outlining procedure does not necessarily equate to a due process violation under the federal constitution. ***If otherwise, federal courts would have the task of insuring strict compliance with state procedural regulations and statutes.***") (emphasis added); *Jolibois v. Florida Int'l University Bd. of Trustees*, 2016 WL 3542239, *4 (11th Cir. June 29, 2016) ("Jolibois's suspension and termination did not violate his procedural due process rights, because a violation of CBA procedures does not necessarily equate to a due process violation under the federal constitution.") (citation and internal quotation marks omitted).

So, in order to set forth an actionable § 1983 claim against defendant Dees, Longmire must show that his purported violations of Personnel Board Rule 14.5 amounted to a clearly established violation of the U.S. Constitution. Stated differently, to neutralize this defendant's qualified immunity defense, Longmire must demonstrate that Dees' ostensible failure to "investigate to insure proper procedure was followed as set out in Rule 14.3" in the wake of the December 16 hearing violated Longmire's due process rights. The issue is not whether Longmire received all the process she was due at the December 16 hearing; after all, she comes forward with no claims against Dees predicated on the December 16 hearing and no evidence that he orchestrated or caused any deprivations at that hearing. Rather, insofar as plaintiff's claims against Dees are that he did not investigate procedural compliance pursuant to Personnel Board Rule 14.5, Longmire must explain how Dees' failure to investigate violated her due process rights. Not only has Longmire failed to make any showing that Dees' alleged noncompliance with Personnel Board Rule 14.5 was itself in contravention of her due process rights, but she has also failed to meet her burden of establishing that the law was clearly established in that regard at the time of the purported violation.[11]

---

[11]     Instead of addressing what Dees is alleged to have done or omitted to do to violate her due process rights, Longmire focuses on alleged deprivations during the December 16 hearing itself, without linking them to Dees. Nowhere in the pleadings or in Longmire's summary judgment submissions does she set forth any factual or legal basis for asserting constitutional claims against Dees based on those alleged constitutional violations. In short, she (Continued)

This conclusion is not altered by Longmire's assertions in her summary judgment brief that Dees also violated Personnel Board Rules 14.3(c) and 14.6, as they relate to a "uniform format" and subpoena issuance.  (*See* doc. 18, at 7-8, 10.)[12]  A threshold defect in this line of argument is that nowhere does the Complaint allege or even suggest that Longmire's claims against Dees are rooted in alleged violations of Rules 14.3(c) or 14.6.  Of course, a summary judgment memorandum is not a proper vehicle for amending the pleadings.  *See, e.g., GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012) ("It is well-settled in this circuit that a plaintiff may not amend the complaint through argument at the summary judgment phase of proceedings."); *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

Even if the Complaint could reasonably be read as asserting constitutional claims against Dees predicated on non-compliance with Rules 14.3(c) and 14.6, plaintiff has nonetheless failed to make a sufficient showing to overcome Dees' qualified immunity defense.  Personnel Board Rule 14.3(c) provides that "[t]he Director shall prepare and disseminate to all Appointing Authorities and department heads a uniform format for use in pre-disciplinary hearings."  (Doc. 13-3, at 54.)  This is clearly a discretionary function as that term is utilized in qualified immunity jurisprudence.  Therefore, Longmire can overcome the qualified immunity defense only by showing that Dees violated her constitutional rights and that those rights were clearly established.  But she has come forward with no record evidence that Dees failed to prepare "a uniform format for use in pre-disciplinary hearings" (*i.e.*, that he did not discharge his obligations under Rule 14.3(c)).  Moreover, Longmire presents neither facts nor law to show that any divergence with Rule 14.3(c) had any due process implications for her, much less that it was clearly established that a personnel director's failure to prepare a "uniform format for use in pre-

---

does not adequately tailor her showing on the qualified immunity defense to the purported acts and omissions of the specific defendant who is invoking it.

[12]      In her brief, Longmire inaccurately cites Rule 14.3(c) as "MCPB Rule 14.2(c)," much as defendants did in their principal filing.  (*See* doc. 13, at 12 n.23.)  Review of the Personnel Board Rules makes clear that the subject rule that the parties intended to cite is actually Rule 14.3(c).

disciplinary hearings," in and of itself, rises to the level of a due process violation for a participant in such a hearing.[13]

Similarly, Personnel Board Rule 14.6 specifies that "[i]t shall be the duty of the Director to subpoena witnesses other than character witnesses, for or against the employee upon written request of either party to the hearing." (Doc. 13-3, at 55.) "Civil Service employees under the jurisdiction of the Personnel Board shall be required to attend and testify without subpoena." (*Id.*) Issuance of subpoenas is a discretionary function as that term is defined in qualified immunity parlance; therefore, the burden lies with Longmire to show a violation of her clearly established constitutional rights.[14]

In her summary judgment brief (not her pleading), Longmire protests "the denial of the subpoena request for Mayor Stimpson or [denial of] the right to question the Dees [*sic*] himself as Personnel Director." (Doc. 18, at 7.) She presents no evidence, however, that Dees failed or refused to issue subpoenas to anybody. Moreover, uncontested record facts demonstrate that during the post-deprivation hearing, the Personnel Board's attorney, James Brandyburg, who presided over the hearing, informed Longmire's counsel, "I have already ruled that the mayor should not be called as a witness in this proceeding." (Doc. 13-6, at 23.) Plaintiff's own averment is that "the Personnel Board's lawyer … den[ied] my attorney the right to have the Mayor appear and testify," and that "the Personnel Board's lawyer den[ied] my attorney the right

---

[13]    At most, plaintiff engages in unadorned speculation that "[i]f Defendant Dees had prepared and disseminated a uniform format for use in pre-disciplinary hearings then it is very possible all of the due process violations committed by the Appointing Authority would not have occurred." (Doc. 18, at 10.) Again, Longmire submits no evidence that Dees failed to prepare and disseminate a "uniform format" and presents no coherent analysis of how any such omission would have affected the December 16 hearing or implicated her constitutional rights in any way.

[14]    Longmire balks in her sur-reply that Dees did not handle the subpoena duty through means within his power to utilize, because "he just refused to perform his job altogether." (Doc. 23-1, at 2.) But this argument overlooks Eleventh Circuit guidance that "for purposes of qualified immunity, a governmental actor engaged in purely ministerial activities can nevertheless be performing a discretionary function." *Holloman*, 370 F.3d at 1265. Such is the case here. Also, the "means within his power to utilize" prong is intended to exclude situations such as a teacher who "sign[s] her students up for the Army to promote patriotism" or "compel[s] them to bring their property to school to redistribute their wealth to the poor so they can have firsthand experience with altruism." *Id.* Dees' alleged failure to issue subpoenas for Longmire's witnesses is in no way comparable to those examples.

to call Defendant Dees to testify." (Longmire Decl., ¶¶ 26, 29.) None of plaintiff's evidence connects those rulings to the issuance (or want of issuance) of subpoenas by Dees. Rather, if there were a constitutional deprivation caused by Longmire's inability to call witnesses at the post-demotion hearing, plaintiff's evidence unambiguously places responsibility for that due process infringement on the shoulders of the Personnel Board's lawyer, not Dees. The issue is not whether subpoenas were or were not issued, but rather is that the Personnel Board's attorney allegedly refused to allow Longmire to call her witnesses. Plaintiff's evidence does not support a reasonable inference that Dees had anything to do with the Board's refusal to allow her to call Mayor Stimpson and Dees as witnesses.[15]

The bottom line is straightforward: Defendant Dees has shown that all of his alleged acts and omissions that form the basis of Longmire's claims against him were undertaken pursuant to the performance of his duties and within the scope of his authority, such that they were "discretionary functions." In light of that determination, Dees is entitled to qualified immunity on plaintiff's claims against him in his individual capacity for monetary damages unless Longmire shows both that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman*, 370 F.3d at 1264. She has not done so. Many of what plaintiff calls due process violations concern the acts and omissions of other defendants, not Dees. She has neither identified nor shown what this defendant did to violate her constitutional rights. Nor has she shown any legal basis for a conclusion that it was clearly established that inadequate performance of a Personnel Board Rule 14.5 investigation violates due process. And plaintiff has not established that unpleaded claims against Dees

---

[15] This conclusion is reinforced by Dees' uncontroverted statement that he "attended the [March 6] hearing in [his] official capacity as Personnel Director, but did not participate in the hearing or the decision." (Dees Aff., ¶ 5.) There is simply no record evidence to link any purported due-process infringement arising from Longmire's inability to call witnesses to this defendant. To be sure, plaintiff asserts in her brief that Dees "denied Longmire of [*sic*] her due process rights to cross-examine two key indispensible witnesses" (doc. 18, at 13), but she identifies no record facts to support this conclusory statement. Her own evidence is that the Personnel Board lawyer – not Dees – denied those requests, and she does not rebut defendant's showing that Dees played no role whatsoever in the hearing or the decision. Inasmuch as Longmire has not shown that Dees violated her clearly established constitutional rights, he is entitled to summary judgment on any claim alleging failure to perform duties under Personnel Board Rule 14.6.

relating to alleged violations of Personnel Board Rules 14.3(c) and 14.6 are cognizable, because she presents no evidence that Dees violated those rules or that any such violations made any difference (much less a difference of constitutional dimensions) to the administrative hearings that preceded and postdated her demotion.

For all of the reasons, the Court finds that defendant Dees' Motion for Summary Judgment is properly **granted** as to the affirmative defense of qualified immunity. Plaintiff's claims against Dees for money damages in his individual capacity are therefore **dismissed**.

### B.    *The Official-Capacity Claims.*

Longmire's Complaint also names Dees as a defendant in his official capacity as Personnel Director of the Mobile County Personnel Board. Dees moves for the dismissal of all claims against him in his official capacity on the ground that both he and the Personnel Board are named defendants, and courts in the Eleventh Circuit routinely deem suits against both a local government official in his official capacity and the entity of which he is an agent to be redundant. Dees' statement of the law is accurate. "When an officer is sued under Section 1983 in his or official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent. … Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (footnote, citations and internal marks omitted).[16] By direct application of these principles, Longmire's suit against Dees in his official capacity is the same as a suit against the Mobile County Personnel Board. But Longmire has already named the Personnel Board as a separate defendant. By including as defendants both the Personnel Board and Dees in his official capacity, Longmire raises the specter of claims that may potentially be both redundant and confusing. *See Busby*, 931 F.2d at 776 ("To keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to

---

[16]    *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("[A § 1983] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. … As such, it is no different from a suit against the State itself."); *Penley v. Eslinger*, 605 F.3d 843, 854 (11th Cir. 2010) ("Official-capacity suits … generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation omitted); *Cooper v. Dillon*, 403 F.3d 1208, 1221 n.8 (11th Cir. 2005) ("We note that a suit against Dillon in his official capacity is the same as a suit against the municipality of the City of Key West.") (citation omitted).

the jury."). The appropriate remedy is dismissal of the official-capacity claims against the individual defendant.

Plaintiff's rejoinder to this compelling argument is a conclusory statement that "[t]he office Defendant Dees represents is that of 'Personnel Director,'" and not the Personnel Board. (Doc. 18, at 13.) Plaintiff makes no factual showing that Dees is not an agent of the Personnel Board. She makes no legal showing that the case law cited by defendant Dees would recognize the distinction she advocates. More fundamentally, her line of reasoning breaks down upon scrutiny of the relationship between Personnel Director and Personnel Board. Again, it is black-letter law that a suit against a municipal officer in his official capacity is simply another way of pleading an action against an entity of which that officer is an agent. Plaintiff's position – untethered to any law or facts – is that Dees is an agent of the office of Personnel Director, not an agent of the Personnel Board. But Local Act 470, the legislation that creates the Mobile County Personnel Board and Personnel Director, is irreconcilable with that assertion.[17] Accordingly, the Court concludes that Longmire's claims against Dees in his official capacity as Personnel Director are, in actuality, claims against the Personnel Board, the entity Dees represents. Because Longmire has also brought claims against the Personnel Board, her claims against Dees in his official capacity are redundant and potentially confusing, and are therefore due to be **dismissed**.

**IV.   Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1.     Plaintiff's Motion for Leave to File Surrebuttal (doc. 23) is **granted**, and plaintiff's proposed sur-reply has been considered herein;

2.     Defendant Dees' Motion for Summary Judgment (doc. 12) is **granted**. All claims asserted against Dees in his individual capacity for monetary damages are

---

[17]     For example, Local Act 470 provides that the Personnel Board selects the Personnel Director, that the Personnel Director reports to the Board, and that the Personnel Director "shall hold office at the will of the board." (Doc. 13-2, § VIII.) And plaintiff pleads that the Personnel Board is responsible for adhering to its own rules and regulations. (Complaint, ¶ 6.) These and other facts undermine Longmire's apparent contentions that the Personnel Board is not legally accountable for the acts and omissions of the Personnel Director, that the Personnel Board and Personnel Director are entirely distinct legal entities, and that there is no agency relationship between them.

**dismissed** under principles of qualified immunity.  All claims asserted against Dees in his official capacity are **dismissed** as unnecessary and redundant of those asserted by plaintiff against the Mobile County Personnel Board, the entity that Dees represents; and

3.   Plaintiff's claims against Dees in his individual capacity for injunctive and declaratory relief remain intact, inasmuch as the affirmative defense of qualified immunity does not reach those claims and Dees has not moved for summary judgment as to those claims on any other legal basis.

DONE and ORDERED this 26th day of October, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE