# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **CARLA LONGMIRE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 16-0025-WS-M** |
| | ) | |
| **CITY OF MOBILE, ALABAMA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This matter comes before the Court on Defendants City of Mobile, Sandy Stimpson, James Barber and Joseph Kennedy's Motion for Summary Judgment (doc. 36); defendant Donald Dees' Motion for Summary Judgment (doc. 37); defendant Mobile County Personnel Board's Motion for Summary Judgment (doc. 39); and Plaintiff's Motion for Partial Summary Judgment Against All Defendants (doc. 44). All four Motions have been briefed and are now ripe for disposition.[1]

**I.    Nature of the Case.**

Plaintiff, Carla Longmire, was employed by the City of Mobile Police Department as a Police Captain. In this capacity, she was a Mobile County Merit System Employee whose

---

[1]     A pair of observations is warranted at the outset. First, through mistake or inadvertence, plaintiff filed two identical documents styled "Plaintiff's Reply to Defendant Dees and the Mobile County Personnel Board's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment" (docs. 56 & 57) just 19 minutes apart in the overnight hours of February 17 – 18. In the interest of streamlining the record, the earlier filing (doc. 56) is **stricken** as duplicative. Second, because of the welter of overlapping Rule 56 Motions filed in this case, the Court cautioned the parties early in the summary judgment briefing process that they "must take all reasonable measures to minimize duplication and redundancy in their summary judgment briefs" and "take appropriate precautions to avoid cluttering the file with a multiplicity of documents merely repeating the same arguments in the same way." (Doc. 43, at 2.) Notwithstanding this admonition, plaintiff's counsel proceeded to file four briefs spanning nearly 100 pages that, in large part, simply restate and recycle arguments from one brief to the next. Such redundancies have hampered the Court's efforts to review these submissions in an efficient manner.

employment was subject to, and governed by, the rules of the Mobile County Personnel Board. (Complaint, ¶¶ 1, 7.) Longmire brings this action against six governmental defendants, alleging procedural due process violations in connection with certain disciplinary proceedings conducted in 2013 and 2014, pursuant to which she was demoted from the rank of Captain to that of Lieutenant. In particular, Longmire has named four municipal defendants, to-wit, the City of Mobile, Alabama (the "City"); Sandy S. Stimpson, Mayor of the City of Mobile ("Mayor Stimpson"); James Barber, Chief of the Mobile Police Department ("Chief Barber"); and Joseph D. Kennedy, the former Assistant Chief of the Mobile Police Department ("Assistant Chief Kennedy") (collectively, the "City Defendants"). Also named as defendants are the Mobile County Personnel Board (the "MCPB") and Donald Dees, the MCPB's former Personnel Director.

In Count One of the Complaint, Longmire asserts a cause of action under 42 U.S.C. § 1983 for violation of procedural due process rights guaranteed by the Fourteenth Amendment. Plaintiff's stated theory of liability is that "[b]y demoting Plaintiff without following mandatory and non-discretionary Mobile County Merit System due process procedures, Defendants deprived the Plaintiff of her property rights interest in her job as a county merit system employee without due process of law." (Complaint, ¶ 13.) Count One is littered with allegations that defendants conducted Longmire's disciplinary proceedings in a manner that violated the provisions of MCPB Rule 14.3(a), as well as certain other rules established by the Mobile County Personnel Board. (*Id.*, ¶¶ 14, 16, 18, 19, 23, 24.) Longmire's § 1983 claim against all defendants is summarized in the Complaint as follows: "The provisions of MCPBR 14.3(a) mandated certain prescribed timeframes and due process procedures. The Defendants knowingly failed to abide by them and continue to do so even through the date of this filing." (*Id.*, ¶ 24.) After the City Defendants made the disciplinary decision, Longmire alleges, the MCPB "upheld the demotion of Longmire and did so in violation of its own due process rules and the Constitution of the United States." (*Id.*)

Count Two of the Complaint is captioned "Due Process – (State based claim)," and alleges that the demotion decision "unlawfully deprived Longmire of her right to due process guaranteed under the Alabama Constitution of 1901, Article 1, §§ 6, 13, 22, among other applicable sections, including the provisions of the 'Act' that created the MCPB, the Rules of the Mobile County Personnel Board; including well-settled case law decisions." (*Id.*, ¶ 27.) Thus,

Count Two is a due process claim rooted in the Alabama Constitution, rather than the U.S. Constitution, but is otherwise analogous to and coextensive with Count One.

## II.     Factual and Procedural Background.[2]

### A.     The December 10 Notice.

On December 10, 2013, a three-page document captioned "Mobile Police Department Disciplinary Trial Board Notice" and signed by defendant Assistant Chief Kennedy was hand-delivered to Longmire.  (Doc. 13-4.)  The Notice purported to be from defendant Mayor Stimpson (listed as "Designated Appointing Authority") and reflected that administrative disciplinary action (consisting of "demotion, suspension not to exceed thirty (30) days, or dismissal") was contemplated against Longmire.

On its face, the December 10 Notice delineated two charges against Longmire, both pursuant to MCPB Rule 14.2's prohibition on "conduct unbecoming an employee in the public service."  (Doc. 13-4.)  Charge I included a "Specification" in the Notice in the following terms:

> "That during the month of September 2013, Captain Longmire engaged in an intimate relationship with a subordinate, which was under her command.  The investigation revealed that on several occasions during the aforementioned month Captain Longmire met with the subordinate at her apartment during duty hours and on at least one occasion they engaged in sexual intercourse."

(*Id.* at 2.)  Similarly, the December 10 Notice included the following Specification of the factual underpinnings of Charge II:

> "That as the commander over 3rd Precinct, Captain Longmire failed to provide proper direction, oversight, and guidance over her subordinate, in that she allowed

---

[2]     The material facts for all four pending summary judgment motions are largely uncontested.  Nonetheless, to the extent that there is divergence in the facts upon which the parties rely, the Court remains mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007).  Thus, except in Longmire's Motion for Partial Summary Judgment, plaintiff's evidence is taken as true and all justifiable inferences are drawn in her favor.  Also, federal courts cannot weigh credibility at the summary judgment stage.  *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.").  Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept[s] [Longmire's] version of the facts drawing all justifiable inferences in [her] favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

Officer Latham to remove himself from service, by logging off his MDT, during his assigned shift to meet with her at her apartment."

(*Id.* at 3.)

The December 10 Notice alerted Longmire that a "non-adversary Trial Board Hearing" would be convened at Police Headquarters concerning these charges at 9:00 a.m. on December 16, 2013. During this hearing, the Notice continued, Longmire "will be given an opportunity to enter a plea relative to the stipulated alleged charges and specifications. You will be afforded a chance to respond verbally to the alleged charges if you so desire." (*Id.* at 1.) The Notice further apprised Longmire of the following: (i) "you are entitled to have legal counsel and/or a representative present at the hearing as an observer during any questioning or statement(s) made by you;" (ii) "you may submit a list of witnesses who can give direct testimony on your behalf that is relevant to the alleged charges and specifications;" (iii) any list of such witnesses must be "presented to the Department's legal advisor within three (3) working days upon receipt of this Notice;" and (iv) in the event that discipline were imposed, Longmire would "have a right of appeal as granted by the Rules of the Mobile County Personnel Board." (*Id.*)

### B. The Pre-Deprivation Hearing.

The Trial Board Hearing was convened as scheduled on December 16, 2013, before a Trial Board Committee consisting of Assistant Chief Kennedy and two other Mobile Police Department officials. (Doc. 18-2, at 2.)[3] Also present was the City of Mobile's Assistant City Attorney, Wanda B. Rahman. (*Id.*) Mayor Stimpson (the ultimate decision maker) did not attend. Longmire was present, and brought with her a non-attorney representative named Joanne Ming. (*Id.* at 4.) At the outset of the hearing and after being placed under oath, Longmire acknowledged both receipt of the December 10 Notice and awareness of her due process rights. (*Id.* at 5.) She initially entered a plea of "[n]ot guilty with an explanation" as to Charge I and "[n]ot guilty" as to Charge II. (*Id.* at 6.) Longmire then exited the hearing room, and Officer Latham (the subordinate with whom Longmire was charged with being involved in an intimate

---

[3] To be precise, the Trial Board Hearing was convened for the purpose of considering disciplinary action as to each of Longmire and Officer Latham (the subordinate with whom she was alleged to have had sexual relations while on duty). Rather than taking up the disciplinary issues involving the two officers separately, the Trial Board addressed them via a single consolidated hearing.

relationship) entered and pleaded guilty to charges of conduct unbecoming, truthfulness during investigation and disobedience of orders based on his having had private meetings and sexual intercourse with Longmire at her apartment during duty hours. (*Id.* at 8-10.)

At that time, Officer Latham left the room and Longmire returned to face questioning by Assistant City Attorney Rahman. During such examination, Longmire admitted having had sexual relations with Officer Latham at her apartment during her lunch break while he was on duty. (Doc. 18-2, at 11.)[4] She also admitted that Officer Latham had come to her apartment to visit her on multiple other occasions during duty hours. As the hearing proceeded, Longmire indicated that she wished to change her plea and "Plead guilty" to Charge I. (*Id.* at 22.) Assistant Chief Kennedy later asked, "But you want to plead guilty to the first charge?" (*Id.* at 34.) Longmire responded in the affirmative. (*Id.*) By the end of the hearing, Longmire conceded that allowing Officer Latham to come to her private dwelling while he was on duty was not "proper supervision," and on that basis she changed her plea to guilty on Charge II, as well. (*Id.* at 43.)

When Longmire's testimony concluded, she left the hearing room. The Trial Board then received testimony from four other witnesses outside of Longmire's presence, to-wit: Officer Latham, Sergeant David Wayne Ellzey, Sergeant Michael Barber, and Chaplain Jerry Brown. Longmire did not identify or ask to call any witnesses of her own.

On December 17, 2013, a letter signed by Mayor Stimpson on behalf of the City was issued to Longmire with the subject line "OFFICIAL NOTICE OF DEMOTION." (Doc. 13-5.) Mayor Stimpson's letter recounted the Trial Board hearing that had occurred the previous day, then stated as follows:

---

[4]      Later during the hearing, the following exchanges occurred between Longmire and Assistant Chief Kennedy:

"KENNEDY: Okay. So there's no question that you know that you did have sex with [Officer Latham] while he was on duty.
"LONGMIRE: Right."

     *                              *                           *

"KENNEDY: … I mean you own up to the fact that the relationship, that there was a relationship and you had sexual contact with him at least once while he was on duty, correct?
"LONGMIRE: Yes, correct."

(Doc. 18-2 at 27, 33.)

"For violation, in whole or in part, of cited Mobile Police Department and Mobile County Personnel Board Rules and Regulations, I concur with the recommendation of the Trial Board and Chief of Police that you be demoted to Police Lieutenant effective documented receipt of this Official Notice of Demotion."

(*Id.*) The December 17 Letter concluded by apprising Longmire of her right to appeal her demotion pursuant to the rules of the Mobile County Personnel Board. (*Id.*)[5]

### C. The Post-Deprivation Hearing.

Longmire timely filed a notice of appeal from Mayor Stimpson's demotion decision on or about December 20, 2013. (Dees Aff. (doc. 13-1), ¶ 4; doc. 13-7, at 1.) In accordance with that appeal, defendant Donald Dees (who was then the Personnel Director of the MCPB) confirmed that Longmire had been furnished with written notice of the pre-disciplinary hearing at least 24 hours in advance, that the notice set forth the factual allegations underlying the contemplated disciplinary action, that Longmire received an opportunity to respond to the charges at the hearing, that Mayor Stimpson demoted her following the hearing, that Longmire had been given written notice of her demotion, and that her notice of appeal was timely. (Dees Aff., ¶ 4.) After confirming these circumstances, Dees scheduled the matter for a *de novo* hearing before the MCPB. (*Id.*)

Longmire's appeal was heard by the MCPB on March 6, 2014. Longmire attended the Personnel Board hearing, where she was represented by counsel of her choosing, Carroll Ogden. (*Id.*, ¶ 5; doc. 13-6.) Also present were five members of the MCPB, attorney Rahman representing the City, and attorney James Brandyburg representing the MCPB. (Doc. 13-6, at 2.) Brandyburg presided over the hearing, including calling witnesses and deciding evidentiary matters. Before any testimony was presented, Longmire's counsel summarized three motions to dismiss that had been submitted, all alleging procedural improprieties relating to the December 16 proceedings. In particular, Longmire's counsel described various purported violations of MCPB Rules 14.3(a) and Rule 14.5, to-wit: (i) Longmire was not "afforded a pre-disciplinary hearing in front of the person charged with final decision-making authority" (*i.e.*, Mayor Stimpson); (ii) the December 10 Notice did not inform Longmire "that she has a right to submit

---

[5]     For his role in these incidents, Officer Latham was suspended for 240 hours, or roughly six weeks. He was also transferred away from Longmire's supervision. (Doc. 13-6, at 71-72.) Officer Latham could not be demoted because he had no rank. (*Id.*)

either a verbal statement or a written statement … or really none at all … to the Appointing Authority," but instead cited only her right to make a "verbal" statement; and (iii) Dees failed to comply with the requirements of MCPB Rule 14.5 that he review the material for compliance with Rules 14.3 and 14.4 before setting the matter for MCPB hearing.  (Doc. 13-6, at 10-12.) Longmire's counsel termed this a "very serious situation" that had deprived Longmire of due process of law.  (*Id.* at 13.)  After hearing argument from the City's attorney (Rahman), Brandyburg recommended that the MCPB deny Longmire's motions to dismiss.  (*Id.* at 13-14.) The Board adopted Brandyburg's recommendation and denied the motions.  (*Id.* at 14-15.)[6]

As the hearing proceeded, the City called two witnesses to testify in favor of its demotion decision.  The first, Roy Bruce Hodge, Jr., was a Mobile Police Department lieutenant who explained his investigation of allegations of on-duty sexual contact between Longmire and Officer Latham.  (*Id.* at 20-22.)  Longmire's counsel objected "to any testimony until you put the mayor on the stand … to establish what he knew and what he didn't know at the time he made his decision."  (*Id.* at 23.)  Brandyburg overruled the objection and indicated, "I have already ruled that the mayor should not be called as a witness in this proceeding."  (*Id.*)  The City's second witness, Assistant Chief Kennedy, testified about various topics, including the December 16 hearing and Longmire's entry of guilty pleas at that time.[7]  Assistant Chief Kennedy indicated that the Trial Board had unanimously agreed that demotion was the appropriate punishment, given that Longmire and Officer Latham's conduct was "the worst thing I can possibly imagine" and "the most egregious act that I can think that you would do."  (*Id.* at 68-69.)  He explained that the Trial Board "didn't fire her because probably of her length of service" and her relatively

---

[6]　　Upon the denial of Longmire's motions to dismiss, her counsel requested a continuance for the purpose of "seek[ing] appropriate writ of mandamus from the Circuit Court" concerning the alleged procedural violations.  (*Id.* at 15-16.)  The City's attorney objected to a continuance.  After hearing oral argument on that request, Brandyburg opined, "I don't agree that mandamus is the proper remedy for this and I don't believe that 14.3 has been violated under the circumstances, and I would recommend to the Board that the motion to continue be denied and that we proceed."  (*Id.* at 19.)  The MCPB adopted that recommendation.

[7]　　Assistant Chief Kennedy also testified that the Mobile Police Department investigation revealed that a carjacking had occurred on September 6, 2013, and that Officer Latham had been at Longmire's apartment while on duty instead of responding to the carjacking call.  (*Id.* at 61-63.)

unblemished disciplinary record. (*Id.* at 69-70.) On cross-examination, Assistant Chief Kennedy elaborated that Longmire's discipline was more severe than Officer Latham's because she was his supervisor and "the person in charge is surely, you know, more at fault than the under officer." (*Id.* at 79.)

After the City rested, Longmire's counsel had an opportunity to put on testimony and evidence at the MCPB hearing. In lieu of doing so, Longmire simply "stipulate[d] to the charges as was read" and made a closing statement. (*Id.* at 81-82.) During that closing statement, Longmire's counsel re-emphasized plaintiff's position that the December 16 hearing was procedurally deficient under MCPB rules. (*Id.* at 88.) The hearing then concluded and the MCPB took the matter under submission.

On March 20, 2014, the MCPB issued a five-page Order (doc. 13-7) that recited the charges and specifications against Longmire, summarized the testimony and exhibits presented at the March 6 hearing, and affirmed the demotion decision. In so doing, the March 20 Order reflected the Personnel Board's unanimous conclusions that (i) "the Appointing Authority has met the burden of proof cast upon it;" (ii) Longmire had admitted to the conduct charged, and the MPCB was "satisfied that CARLA LONGMIRE was guilty of all the charges;" and (iii) the MCPB had considered *de novo* what discipline should be imposed against Longmire for her misconduct, and found that "demotion is the appropriate sanction." (Doc. 13-7.)

### D. The State-Court Appeals.

As was her right, Longmire appealed the Personnel Board's decision to the Circuit Court of Mobile County, Alabama. With the benefit of multiple hearings and summary judgment briefing, Circuit Judge Brooks entered a nine-page Order (doc. 13-8) on August 7, 2015, affirming the MCPB's decision to demote Longmire to the rank of lieutenant and entering final judgment in the City's favor. The Circuit Court Order recognized Longmire's argument "that the Personnel Board violated its own rules and regulations as it relates to due process, timeliness and notice and failure to demand the presence of the Appointing Authority at the appeal hearing." (Doc. 13-8, at 7.) In finding no merit to those contentions, the Circuit Court Order observed that Longmire's counsel had previously litigated those same procedural objections in a case called *Angela Wright v. City of Mobile*, and that the Alabama Court of Civil Appeals had rejected all such arguments. (*Id.* at 7-8.) The Circuit Court Order articulated the following findings:

> "This Circuit Court finds that there is substantial evidence to support the factual findings and the order of the Mobile County Personnel Board. This Circuit Court further finds that the Personnel Board's action was not 'unlawful' or 'unreasonable' within the meaning of Local Act 470. … This Court finds that all rules and timely notices were adhered to and there is no issue of material fact that exists that would compel this Court to rule otherwise."

(*Id.* at 8.)

Longmire appealed the Mobile County Circuit Court's decision all the way through the Alabama appellate courts. On September 16, 2016, the Alabama Court of Civil Appeals issued a Certificate of Judgment confirming that (i) that court had affirmed the Circuit Court's judgment on April 22, 2016; and (ii) the Alabama Supreme Court had denied Longmire's petition for writ of certiorari on September 16, 2016. (Doc. 34-2.)[8]

### E. The "Due Process" Lawsuit.

On December 16, 2015, after the Mobile County Circuit Court had entered judgment against Longmire and while her administrative appeals were winding through the Alabama appellate courts, Longmire filed the present collateral lawsuit in Mobile County Circuit Court against the City Defendants, the MCPB and Dees.[9] As noted, Longmire seeks relief in this

---

[8]     During the pendency of her appeals to Alabama appellate courts, Longmire filed a Rule 60(b)(6) motion for relief from judgment in the Mobile County Circuit Court. After briefing and oral argument, the Circuit Court entered a 10-page Order (doc. 34-3) on April 29, 2016, dismissing the Rule 60(b)(6) motion for lack of jurisdiction or, alternatively, denying it. In the Rule 60(b)(6) motion, Longmire raised a constitutional issue that her exclusion from the hearing room during the pre-disciplinary hearing when other witnesses were testifying amounted to a due process violation. Judge Brooks opined as follows: (i) the Mobile County Circuit Court lacked jurisdiction to decide questions of constitutional law in administrative appeals such as Longmire's, because Alabama law provides that such constitutional issues must be raised in a separate collateral suit, not via administrative appeal; (ii) Rule 60(b)(4) relief was unavailable to Longmire, in any event, for an allegedly "void" determination of the City or the Personnel Board; and (iii) any request for relief under Rule 60(b)(2) was untimely, and Longmire lacked anything that might qualify as "newly discovered evidence," anyway. Longmire appealed the Circuit Court's Order denying Rule 60(b) relief; however, the Alabama Court of Civil Appeals affirmed the April 29 Order without opinion on December 9, 2016. (*See* doc. 34-4.) Longmire's petition for rehearing by the Alabama Court of Civil Appeals was denied on February 10, 2017. (*See* doc. 54, Exh. A.)

[9]     Defendants removed this action to this District Court by filing a Notice of Removal (doc. 1) on January 14, 2016. Federal subject matter jurisdiction was properly predicated on the federal question provisions of 28 U.S.C. § 1331, inasmuch as Longmire's
(Continued)

action for alleged deprivations of her procedural due process rights under both the U.S. Constitution and the Alabama Constitution.

An obvious threshold inquiry is why Longmire chose to assert her constitutional due process claims in a separate lawsuit, rather than simply folding those causes of action into her preexisting litigation in the Alabama courts appealing from the demotion decision. The answer is that Alabama courts have limited jurisdiction on administrative appeals of personnel matters, and that such jurisdiction is not sufficiently broad to encompass constitutional due process claims. *See, e.g., Wright v. City of Mobile*, 170 So.3d 656, 661 (Ala.Civ.App. 2014) ("On appeal from a board's decision on a personnel matter, a trial court likewise lacks jurisdiction to decide a constitutional issue because of its limited standard of review. … A constitutional issue may be raised properly only in a separate and distinct collateral suit.") (citations and internal marks omitted).[10] The point is simple: This collateral action is Longmire's lone available vehicle for raising constitutional challenges concerning the manner in which her pre-disciplinary and post-disciplinary hearings were noticed, conducted and decided by defendants. It was, therefore, proper for Longmire to raise her § 1983 due process claims in a separate lawsuit from her administrative appeals.

That said, the law is clear that the Personnel Board was authorized to consider and decide issues concerning compliance *vel non* with its own rules and regulations; thus, Longmire has

---

Complaint on its face seeks relief pursuant to 42 U.S.C. § 1983 for alleged violations of Fourteenth Amendment due process protections.

[10]     *See also City of Mobile v. Robertson*, 863 So.2d 117 (Ala.Civ.App. 2003) ("[T]he Board had not been authorized by Act No. 470 to address constitutional issues. … [T]he fundamental obstacle to circuit-court review of a constitutional challenge on an appeal from the Board's decision was the fact that the issue had not been raised and ruled upon by the Board, thereby precluding appellate review. Because appellate review of constitutional issues in such a case is precluded, the sole manner in which a constitutional challenge may be presented is to invoke the *general jurisdiction* of the circuit court by filing a separate and independent collateral action.") (citations omitted); *Turner v. Mobile County Personnel Bd.*, 689 So.2d 168, 170 (Ala.Civ.App. 1997) (in administrative appeal context, the circuit court's "jurisdiction is limited to a consideration of issues properly raised and made of record before the Board, and those do not include constitutional issues. In other words, only by invoking the *general* jurisdiction of the circuit court, by way of a collateral suit, could [plaintiff]'s constitutional challenges be raised and presented for determination.") (citation omitted).

been able to litigate – and has in fact litigated – her procedural objections to what she says are serious violations of the MCPB rules in her state administrative appeals, and the Alabama courts have fully adjudicated her claims that the City and the MCPB failed to adhere to MCPB rules in the pre-disciplinary and post-disciplinary hearings. The only issues that the Alabama courts have not addressed in her administrative appeals – because they were not empowered to decide such matters for the reasons stated *supra* – are Longmire's constitutional claims relating to alleged deprivations of procedural due process. Those constitutional issues are the *raison d'etre* of this collateral litigation and represent the sole reason we are here today.

At the close of discovery, all parties filed overlapping motions for partial or complete summary judgment. In particular, the City Defendants move for summary judgment on the grounds that, *inter alia*, the record does not establish any constitutional deprivations with regard to the pre-disciplinary hearing, there is no evidence of a municipal custom or policy resulting in any such deprivation, principles of collateral estoppel bar Longmire from relitigating certain issues here, and the failure to train claims are unsupported by the record. (*See* doc. 36.) The MCPB moves for summary judgment on the grounds that, *inter alia*, the City's pre-disciplinary hearing comported with procedural due process, the MCPB's post-disciplinary hearing gave Longmire an opportunity (of which she chose not to avail herself) to correct any erroneous deprivation of her property rights at the pre-disciplinary hearing, and Alabama law provides an adequate remedy for any procedural due process violations that may have occurred. (*See* doc. 40.) Defendant Dees moves for summary judgment on much the same grounds. (*See* doc. 38.)[11] And Longmire has also filed a Rule 56 Motion wherein she seeks partial summary judgment

---

[11]     Incidentally, this is Dees' second Rule 56 motion filed in this case. On October 26, 2016, the undersigned entered an Order (doc. 25) granting Dees' first motion for summary judgment. The October 26 Order concluded that Dees was entitled to qualified immunity on Longmire's claims against him in his individual capacity for monetary damages because he was engaged in a discretionary function when he investigated whether the City followed the proper procedures in Longmire's pre-disciplinary hearing and Longmire had not met her burden of showing that Dees violated a clearly established constitutional right in performing that discretionary function. (Doc. 25, at 9-18.) The October 26 Order also found that Longmire's claims against Dees in his official capacity were properly dismissed as redundant of her claims against the MCPB. (*Id.* at 18-19.) In the wake of the October 26 Order, Longmire's only remaining claims against Dees are her "claims against Dees in his individual capacity for injunctive and declaratory relief." (*Id.* at 20.) Dees' current summary judgment motion is directed at those pending claims for injunctive and declaratory relief.

against defendants "for their failure to provide her all due process rights as required by the Rules of the [MCPB] relating to her right to confront witnesses against her." (Doc. 44, at 5.) All of these motions have been the subject of extensive briefing.

## III.   Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

## IV.   Analysis.

### A.   *Plaintiff's Efforts to Equate MCPB Rules with Constitutional Requirements.*

From a plain reading of the Complaint and the summary judgment submissions, it is clear that Longmire's claims are grounded in what she characterizes as defendants' noncompliance with Mobile County Personnel Board Rules.[12] Indeed, the Complaint alleges that "[b]y

---

[12]   At various places in her filings, Longmire ticks off a laundry list of procedural objections to her pre-disciplinary and post-disciplinary hearings that are directly grounded in what she claims to be defendants' deviations from MCPB rules. Those purported violations include the following: (i) the pre-disciplinary hearing violated MCBP Rule 14.3(a) because Longmire was required to leave the hearing room while adverse witnesses testified, thus (Continued)

demoting Plaintiff without following mandatory and non-discretionary Mobile County Merit System due process procedures, Defendants deprived the Plaintiff of her property rights interest in her job … without due process of law.  As such, the 'demotion' violated the due process clause of the Fourteenth Amendment." (Complaint, ¶ 13.)  The Complaint goes on to allege that defendants' violations of MCPB Rule 14.3(a) amount to "a 'demotion' of Plaintiff Longmire without the benefit of due process." (*Id.*, ¶ 14.)  Plaintiff expressly asserts in her Complaint that the procedural protections created by Rule 14.3(a) "cannot be abridged without due process of law." (*Id.*, ¶ 24.)

Longmire repeatedly articulated this theory (*i.e.*, that violations of MCPB rules are tantamount to Fourteenth Amendment due process deprivations) in her summary judgment briefs.  In her own Rule 56 Motion, Longmire framed her constitutional claim in the following terms: "[T]his is not a challenge by Plaintiff that the process afforded by state law is insufficient under the Constitution, but that the City of Mobile has failed to follow the procedure that is provided by law, and thereby, has denied Plaintiff the process that is due her under the law." (Doc. 44, at 4-5.)  She further reasoned that "once the due process rights were conferred by … MCPB Rules possessing force and effect of law, it may not constitutionally authorize the deprivation of such interest without appropriate safeguards." (Doc. 55, at 4.)[13]

---

depriving her of the opportunity to confront those witnesses (doc. 44, at 2-3); (ii) the December 10 Notice violated Rule 14.3(a) because it failed to specify that the hearing would be a MCPB Rule 14.3(a) pre-disciplinary hearing, did not notify Longmire that she had the right to respond orally or in writing to the charges, did not indicate that witnesses would be called outside her presence, and did not identify the rules conferring upon Longmire a right to appeal from the Trial Board's determination (doc. 47, at 6-7); (iii) the December 16 Hearing violated Rule 14.3 because "Longmire was not advised that she had a right to provide a written statement … instead of being subjected to cross-examination" (doc. 47, at 7); (iv) the December 16 Hearing violated Rule 14.3 because it was not conducted before Mayor Stimpson or his "designated representative" (doc. 51, at 24); (v) defendant Dees did not comply with MCPB Rule 14.6 by verifying that proper procedure was followed at the December 16 Hearing, and never showed that he completed his investigation within seven days as required by MCPB Rule 14.5 (*id.* at 8); (vi) MCPB violated Rules 14.3(a), 14.5 and 14.6 by not allowing Longmire to cross-examine Mayor Stimpson at the post-disciplinary hearing (*id.* at 9); and (vii) MCPB violated Rule 14.6 by not allowing Longmire to call Dees as a witness (*id.*).

[13]     Similar arguments may be found throughout plaintiff's summary judgment memoranda.  At one point, Longmire stated the black-letter principle that protected interests in (Continued)

There are two distinct legal infirmities with Longmire's attempt to structure her Fourteenth Amendment due process claims as being grounded in violations of Mobile County Personnel Board rules. First, it is incorrect as a matter of law to argue (as plaintiff does) that a federal constitutional violation occurs whenever the City of Mobile or the Mobile County Personnel Board fails to adhere strictly to MCPB rules and regulations. As a matter of well-settled law, the process that is due before a property interest may be deprived is defined by reference to federal constitutional jurisprudence, not state or local procedural rules. *See, e.g., Maddox v. Stephens*, 727 F.3d 1109, 1124 n.5 (11th Cir. 2013) ("Of course, the law is well established that the mere failure to follow state procedures does not necessarily rise to the level of a violation of federal procedural due process rights.").[14] The Eleventh Circuit has taken pains

_____

property are defined by independent sources, then argued that "[s]ince the independent sources in this case flow from State laws and MCPB Rules possessing force and effect of law, then yes – these City Defendants have violated the Fourteenth Amendment." (Doc. 47, at 14.) She elaborated that the "City Defendants violated Longmire's due process rights, in that; they failed to adhere to the provisions of Rule 14.3(a) and removed Longmire from the Trial Board Hearing room when adverse witnesses testified against her." (*Id.* at 15.) She described "violations of MCPBR 14.5 and 14.6" as the "due process violations" animating her claims against defendants Dees and MCPB. (Doc. 51, at 1 n.1.) And she explained her position that "the process that is due Plaintiff is fully and clearly established as a matter of law by the codified Rules of the Mobile County Personnel Board," and that her claims in this lawsuit challenge "the City Defendants' failure to adhere to that established and legally binding procedure, and the Defendant Personnel Board and Director Dees (under state law) failure to enforce compliance with all applicable rules. Specifically Rule 14.3(a), which establishes the procedure for all pre-disciplinary hearings." (Doc. 44, at 3.) She insisted that "the process due is found in MCPB Rule 14.3(a), among others." (Doc. 55, at 4.) In sum, Longmire's legal theory is that "Defendants violated the Fourteenth Amendment due process clause by demoting Plaintiff without following mandatory and non-discretionary Mobile County Merit System due process procedures." (Doc. 47, at 4.)

    [14]    *See also American Civil Liberties Union of Florida, Inc. v. Miami-Dade County School Bd.*, 557 F.3d 1177, 1229 (11th Cir. 2009) ("Even if the Board had violated its own regulation, it would not follow that it had violated due process. The district court's belief that 'an agency must follow its own rules in order to avoid infringing due process rights' … cannot be grounded in the law of this circuit. ***Under that belief, every procedural regulation an agency adopts effectively amends the Constitution so that violating the regulation violates the Constitution. That is not the law.***") (citation omitted and emphasis added); *First Assembly of God of Naples, Florida, Inc. v. Collier County, Fla.*, 20 F.3d 419, 422 (11th Cir. 1994) ("Significantly, the violation of a state statute mandating procedure is not the equivalent of a federal Constitutional violation."); *Ray v. Birmingham Bd. of Educ.*, 845 F.2d 281, 283 (11th Cir. (Continued)

-14-

to "emphasize that the violation of a state statute outlining procedure does not necessarily equate to a due process violation under the federal constitution. If otherwise, federal courts would have the task of insuring strict compliance with state procedural regulations and statutes." *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1528 (11th Cir. 1987). Simply put, "the procedural component of the Due Process Clause does not require the States to comply with state-created procedural rules." *Gissendaner v. Commissioner, Georgia Dep't of Corrections*, 794 F.3d 1327, 1330 (11th Cir. 2015). For that reason, the Court rejects Longmire's efforts to equate every

---

1988) ("we emphasize that the violation of a state statute outlining procedure does not necessarily equate to a due process violation under the federal constitution") (citation omitted); *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1527 (11th Cir. 1987) ("Even if the notice in this case is insufficient to satisfy the state statute, the state statute does not define the process due under the federal Constitution. Therefore, even if the state statute has been violated, that does not prove a violation of a federal constitutional right. Harris must show not just a violation of a state statute, but a constitutional violation in this section 1983 action."); *Smith v. State of Ga.*, 684 F.2d 729, 732 n.6 (11th Cir. 1982) ("Smith also contends that the state agency's failure to follow its own regulations, without more, offends due process. … [T]he two analyses are separate, … and even if DAS departed from its own guidelines, not every violation by a state agency of its own rules rises to the level of a due process infringement.") (citations omitted); *Jolibois v. Florida Int'l University Bd. of Trustees*, 2016 WL 3542239, *4 (11th Cir. June 29, 2016) ("Jolibois's suspension and termination did not violate his procedural due process rights, because a violation of CBA procedures does not necessarily equate to a due process violation under the federal constitution.") (citation and internal quotation marks omitted); *James v. Rowlands*, 606 F.3d 646, 657 (9th Cir. 2010) ("when a state establishes procedures to protect a liberty interest that arises from the Constitution itself … the state does not thereby create a new constitutional right to those procedures themselves, and non-compliance with those procedures does not necessarily violate the Due Process Clause. … Rather, the Due Process Clause itself determines what process is due …."); *Rogers v. Okin*, 738 F.2d 1, 8 (1st Cir. 1984) ("if state procedures rise above the floor set by the due process clause, a state could fail to follow its own procedures yet still provide sufficient process to survive constitutional scrutiny"); *Polion v. City of Greensboro*, 26 F. Supp.3d 1197, 1224 (S.D. Ala. 2014) ("the violation of state procedures does not of itself support a federal due process claim; it is only when the violation of those procedures also constitutes a failure to provide notice and an opportunity to be heard (the federal constitutional lodestars) that a due process claim will arise"); *Boyett v. Troy State University at Montgomery*, 971 F. Supp. 1403, 1411 (M.D. Ala. 1997) ("The Eleventh Circuit has explained that merely because a state law procedure exists does not mean that violation of that procedure is a due process violation under the federal constitution.").

alleged violation of MCPB rules with a deprivation of her procedural due process rights under the U.S. Constitution.[15]

Second, to the extent that Longmire's constitutional claims are predicated on arguments that the City Defendants, the MCPB and Dees did not adhere to Personnel Board rules and regulations, this lawsuit faces an insuperable *Rooker-Feldman* problem. As noted *supra*, after

---

[15]     In so concluding, the Court is, of course, cognizant of Longmire's oft-repeated contention that the property interests for a due process analysis are defined by independent sources such as state statutes and rules. (*See, e.g.,* doc. 44, at 4; doc. 47, at 14; doc. 51, at 17.) To be sure, property interests within the ambit of due process protection are created by independent sources such as state law and rules. *See, e.g., Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012) ("An individual can have a protected property interest in a government benefit when he has a legitimate claim of entitlement to it. … The claim of entitlement must come from an independent source. … The independent source can be a statute, … a regulation, … an express or implied contract, … or a mutually explicit understanding.") (citations and internal quotation marks omitted). Thus, the determination of whether Longmire had or did not have a protected property interest in her position as a Captain in the Mobile Police Department is properly made by reference to Alabama law, regulations and so on. But that is not the relevant inquiry here. Everyone agrees that Longmire had a property interest in continued employment as a Mobile Police Captain. The critical question here is what process was due under the Fourteenth Amendment before the City Defendants and MCPB could deprive her of that protected property interest. And that question is properly answered by reference to federal constitutional law, not state or local rules and regulations. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ("The categories of substance and procedure are distinct. … 'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty. … In short, once it is determined that the Due Process Clause applies, the question remains what process is due. … ***The answer to that question is not to be found in the Ohio statute***.") (citations and internal quotation marks omitted and emphasis added). Procedural due-process claims are subject to a two-part analysis, to-wit: (i) a determination of whether the plaintiff was deprived of a protected property interest; and (ii) if so, what process was due that interest. *See Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011) ("As for the Due Process Clause, standard analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient."). "Independent sources" such as state rules are germane to the former question, but not the latter. In arguing otherwise, Longmire improperly conflates the two separate components of the due-process analysis. *See id.* at 221-22 (converting California procedural rule into a component of a liberty interest "would subject to federal-court merits review the application of all state-prescribed procedures in cases involving liberty or property interests …. That has never been the law. To the contrary, we have long recognized that a mere error of state law is not a denial of due process.") (citations and internal quotation marks omitted).

the Personnel Board affirmed her demotion, Longmire appealed that determination to the Mobile County Circuit Court, at which time she was free to raise (and did raise) arguments that the City and the MCPB had failed to comply with procedural requirements prescribed by the Board's rules and regulations. On August 7, 2015, the Mobile County Circuit Court entered an order affirming Longmire's demotion and making express findings that "the Personnel Board's action was not 'unlawful' or 'unreasonable' within the meaning of Local Act 470," and that "all rules and timely notices were adhered to." (Doc. 13-8, at 8.) In December 2015, four months later, Longmire brought this collateral action wherein she asks this Court to find due process violations based on an underlying determination that the Personnel Board's actions were unlawful and that all MCPB rule and notices were <u>not</u> adhered to. In other words, Longmire is effectively asking this Court to review and re-visit a final state court decision made adversely to her as to whether procedures prescribed by the MCPB rules were followed in her pre-disciplinary and post-disciplinary hearings.

"The *Rooker-Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). "The doctrine applies both to federal claims raised in the state court and to those 'inextricably intertwined' with the state court's judgment. … A claim is inextricably intertwined if it … succeeds only to the extent that the state court wrongly decided the issues." *Id.* (citations and internal quotation marks omitted). Although *Rooker-Feldman* is a narrow doctrine, it unquestionably applies "with full force to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 1261 (citation and internal quotation marks omitted).

That is precisely the situation here, at least insofar as Longmire's due process claims are rooted in arguments that defendants failed to comply with the MCPB rules and regulations. After all, the state court rejected Longmire's contentions that MCPB rules were violated in connection with either her pre-disciplinary hearing conducted by the City or her post-disciplinary hearing conducted by the MCPB, and expressly found that "all rules and timely notices were adhered to." (Doc. 13-8, at 8.) After that state court judgment was entered, Longmire filed the instant collateral lawsuit. Although she raises federal constitutional claims here (which she did

not and could not present in the underlying state-court proceedings), the two sets of claims are inextricably intertwined because Longmire's position is that defendants violated her due process rights by not following MCPB rules and regulations; in other words, given her theory of liability, Longmire's due process claims asserted in this action can succeed only if this Court finds that the state court wrongly decided the issues of whether defendants complied with MCPB rules. Thus, this is a textbook example of a lawsuit barred by the *Rooker-Feldman* doctrine because, to the extent her due process claims hinge on violations of state or local procedural rules and regulations, Longmire is asking this Court to reexamine and reject prior state-court findings (embodied in a final judgment) that the City and Personnel Board did not violate those rules and regulations. *See, e.g., Vasquez v. YII Shipping Co.*, 692 F.3d 1192, 1195-96 (11th Cir. 2012) (confirming that *Rooker-Feldman* "doctrine holds that federal courts below the Supreme Court must not become a court of appeals for state court decisions" and that such doctrine applies to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments") (citation, emphasis and internal quotations omitted).

The only way this Court could rule in Longmire's favor on her claim that defendants violated her constitutional rights by failing to comply with MCPB rules would be by effectively reviewing and overturning the state courts' prior final judgment that no such rule violations occurred. Therefore, *Rooker-Feldman* principles preclude this Court from addressing the merits of Longmire's constitutional claims insofar as those claims proceed from a theory that MCPB rules were violated in connection with her pre-disciplinary and post-disciplinary hearings. This Court does not and cannot sit as an additional layer of appellate review for Alabama state-court determinations that no such violations of MCPB rules and regulations occurred in Longmire's disciplinary hearings.

The foregoing considerations at least arguably dispose of Longmire's constitutional claims in their entirety. Nonetheless, in an abundance of caution, the Court will review the record to ascertain whether the process given to Longmire in connection with the pre-disciplinary and post-disciplinary hearings comported with federal constitutional minimum thresholds, separate and apart from Longmire's now-rejected arguments that non-compliance with state and local procedural rules equates to a Fourteenth Amendment violation.

**B.      Pre-Deprivation Due Process Requirements.**

As a matter of federal constitutional law, it is well-settled that procedural due process "requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (citations omitted). The same is true as to a demotion. That said, the Supreme Court has emphasized that a pre-disciplinary hearing, "though necessary, need not be elaborate." *Id.* at 545. All that is needed to satisfy due process at the pre-disciplinary stage "are notice and an opportunity to respond. … The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. … To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* at 546.[16] Such a pre-disciplinary hearing "is not a mini-trial," but simply functions as "an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994). The Eleventh Circuit's decision in *McKinney v. Pate* is instructive. There, the court found that the plaintiff "received written notice of the charges against him; at the Board hearing, he also heard an explanation of the Board's evidence; finally, with the assistance of counsel, he had the opportunity to present his side of the story through witnesses, evidence, and argument." *McKinney*, 20 F.3d at 1561. On those facts, the Eleventh Circuit concluded that the plaintiff's pre-termination hearing included "all the process due under *Loudermill*." *Id.* at 1562.

---

[16]      *See also Laskar v. Peterson*, 771 F.3d 1291, 1299 (11th Cir. 2014) (finding that pre-termination procedures satisfied minimum procedural due process requirements even though final decision maker was not present at hearing but instead received report and recommendation from hearing committee, where plaintiff received "notice of the charges against him and a pre-termination opportunity to respond in person"); *Anderson v. Board of Regents of University System of Georgia*, 822 F. Supp.2d 1342, 1351 (N.D. Ga. 2011) (essential requirements of due process "are met when a public employee receives written notice of the reasons for termination and an effective opportunity to rebut those reasons prior to termination") (citations and internal quotation marks omitted).

The same is true here. The City Defendants gave Longmire written notice of the charges against her, including detailed factual specifications, six days in advance of the pre-disciplinary hearing. That written notice alerted Longmire that (i) the contemplated disciplinary action was demotion, suspension of up to 30 days, or dismissal; (ii) she would be given an opportunity to enter a plea at the hearing; (iii) she would be afforded "a chance to respond verbally to the alleged charges" at the hearing if she wished; (iv) she was entitled to have legal counsel and/or a representative present at the hearing; (v) she was entitled to submit a list of witnesses to present relevant testimony on her behalf; and (vi) if she were disciplined, she had a right to appeal under MCPB rules. At the pre-disciplinary hearing itself, Longmire was told what the charges were, given an opportunity to enter a plea, and invited to present testimony and explain the charged conduct. These circumstances, taken in the aggregate, comport with the minimum pre-disciplinary due process guarantees as established by *Loudermill* and its progeny.

In arguing otherwise, Longmire balks that the December 10 Notice should have said something more or different than it did (*i.e.*, it should have specified that the hearing was proceeding under MCPB Rule 14.3(a) rather than Mobile Police Department rules, that the City intended to call witnesses to testify outside of Longmire's presence, and that Longmire had a right to provide a written statement rather than testifying orally) and that it violated her due process rights for the Trial Board to examine adverse witnesses in her absence. With regard to notice, constitutional due process principles require nowhere near the level of detail that Longmire insists should have been furnished to her; to the contrary, notice of a pre-disciplinary hearing need not even be in writing to comport with constitutional guarantees. *See, e.g., Harrison v. Willie*, 132 F.3d 679, 684 (11th Cir. 1998) ("Notice was sufficient if it notified Plaintiff of the charges and was timely, whether oral or written."); *Burton v. Alabama Dep't of Agriculture & Industries*, 587 F. Supp.2d 1220 (M.D. Ala. 2008) (no due process violation as to notice of pre-disciplinary hearing, even though employee received notice late in the afternoon on the day prior to the hearing, where "[n]othing indicates that the short notice prevented Burton from participating in this hearing to the extent called for by the nature of the proceeding").

As for Longmire's objections that she was not allowed to confront and cross-examine the City's witnesses against her, she had no such constitutional right at the pre-disciplinary stage. *See, e.g., Brock v. Roadway Exp., Inc.*, 481 U.S. 252, 266, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987) (in employee reinstatement context, "the employer's interest is adequately protected

without the right of confrontation and cross-examination, again so long as the employer is otherwise provided an opportunity to respond at a meaningful time and in a meaningful manner") (citation and internal quotation marks omitted).[17] Again, the rule is simple: "Before termination, a full evidentiary hearing is not required. … Plaintiff need only be given an opportunity to present his side of the story." *Harrison*, 132 F.3d at 684. Longmire received that opportunity at the pre-disciplinary hearing. She was not entitled under the Fourteenth Amendment to a pre-termination mini-trial with full confrontation and cross-examination rights for any adverse witnesses. Longmire has presented no constitutional authority to the contrary; therefore, the Court readily finds that the City Defendants' December 16 hearing for Longmire comported with minimum constitutional requirements for procedural due process at the pre-deprivation stage.[18]

### C. Post-Deprivation Due Process Requirements.

Longmire has also challenged whether she received due process in connection with her post-deprivation hearing before the MCPB. She complains that the MCPB displayed bias by summarily denying motions to dismiss predicated on alleged procedural defects at the pre-disciplinary hearing. She objects that defendants failed to issue subpoenas for witnesses she requested at the post-deprivation hearing, namely, Mayor Stimpson (to elicit testimony about

---

[17] *See also Baird v. Board of Educ. for Warren Community Unit School Dist. No. 205*, 389 F.3d 685, 691 (7th Cir. 2004) ("[D]ue process does not require an employer to provide full 'trial-type rights' such as the right to present or cross-examine witnesses at the pre-termination hearing.") (citation omitted); *Garraghty v. Commonwealth of Virginia, Dep't of Corrections*, 52 F.3d 1274, 1283 n.7 (4th Cir. 1995) ("We do not hold, or even suggest, that pre-termination confrontation rights for public employees are constitutionally required. Such a holding would contravene the Supreme Court's view in *Loudermill* ….").

[18] Although not well-developed in her filings, Longmire appears to suggest at different times that the pre-deprivation hearing violated her procedural due process rights because the decision maker (Mayor Stimpson) was not present. However, plaintiff cites (and the Court has located) no authorities holding that the Fourteenth Amendment requires the decision maker to be in the room for any pre-deprivation hearing that takes place. There is authority to the contrary. *See, e.g., Laskar*, 771 F.3d at 1298 (no due process violation where pre-termination hearing was held before Faculty Hearing Committee, which then made recommendation to university president, who made decision without allowing plaintiff to have an audience with president, because "we do not find that any of the cases cited by Laskar provide that, as a matter of law, a pre-termination hearing must be held before the 'ultimate decision-maker' in order to satisfy procedural due process" and procedural due process does not mandate that plaintiff should have also received a hearing before the president prior to his termination).

what he knew or did not know about the case) and Dees (to examine him as to his investigation of the pre-disciplinary hearing's compliance with MCPB rules). And she complains that the MCPB denied her request for continuance to seek a writ of mandamus as to the alleged procedural violations in the pre-disciplinary hearing.

On this record, the Court finds no genuine factual disputes as to whether Longmire's post-disciplinary hearing before the MCPB was conducted in a manner that comports with Fourteenth Amendment due process requirements. She received considerable advance notice of the hearing. She was allowed to be represented (and was in fact represented) by counsel of her choosing. She was permitted to cross-examine the City's witnesses and was given an opportunity to present evidence bearing on the merits of the conduct underlying her demotion or explaining why she believed she should not be demoted for having engaged in such conduct.[19] Her counsel was allowed to make a closing argument on her behalf. Plaintiff has offered no persuasive argument or authority that Fourteenth Amendment due process principles required more from the MCPB at the post-demotion hearing conducted on March 6, 2014.[20]

---

[19] The record is clear that Longmire sought to call Mayor Stimpson and Dees not as merits witnesses, but to explore her theories that the pre-disciplinary hearing was procedurally flawed under the applicable Personnel Board rules. As such, the MCPB's exclusion of such witnesses in no way inhibited Longmire from presenting a full merits defense to the demotion decision by presenting evidence that either (i) she had not engaged in the challenged conduct, or (ii) the sanction of demotion was excessively harsh for her misconduct.

[20] To be sure, Longmire has made accusations that the MCPB and the Board's attorney (Brandyburg) who presided over the post-deprivation hearing were biased against her. An unbiased decisionmaker is an element of procedural due process. *See, e.g., McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) ("It is axiomatic that, in general, the Constitution requires that the state provide fair procedures and an impartial decisionmaker before infringing on a person's interest in life, liberty, or property."). On this record, however, no reasonable fact finder could conclude that the MCPB and/or Brandyburg were biased against Longmire. Plaintiff argues that a "reasonable factual inference" of bias may be drawn from the summary denial of her motions to dismiss the disciplinary proceedings on procedural grounds and the denial of her motion for continuance to seek a writ of mandamus as to those same procedural matters. But the mere fact that a tribunal rules adversely to a party is not indicative of bias. *See generally United States v. Amedeo*, 487 F.3d 823, 828 (11th Cir. 2007) ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion") (citation omitted); *Byrne v. Nezhat*, 261 F.3d 1075, 1103 (11th Cir. 2001) ("adverse rulings alone do not provide a party with a basis for holding that the court's impartiality is in doubt"). Moreover, plaintiff's allegation that the City Defendants "intended to destroy Longmire by using the guise of an alleged Trial Board for the purposes of inflicting emotional harm and suffering on her" (doc. 47, at 26-27) lacks any
(Continued)

Even if the March 6, 2014 hearing held by the Personnel Board were conducted in a manner that infringed upon Longmire's procedural due process rights, her constitutional claim would nonetheless fail because the State of Alabama provided an adequate mechanism (*i.e.*, administrative review by the state court system) to remedy any such procedural deprivations. Once again, the Eleventh Circuit's decision in *McKinney v. Pate* illustrates the point. The plaintiff in *McKinney* was a public employee who alleged that the decision maker in his disciplinary proceedings was biased, such that those proceedings violated procedural due process guarantees. The federal appellate court rejected this argument, based on the key observation that "[a] demonstration that the decisionmaker was biased, however, is not tantamount to a demonstration that there has been a denial of procedural due process." *McKinney*, 20 F.3d at 1562. After all, "procedural due process violations do not become complete unless and until the state refuses to provide due process." *Id.* (citation and internal quotation marks omitted). Thus, "even if McKinney suffered a procedural *deprivation* at the hands of a biased Board at his termination hearing, he has not suffered a *violation* of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation." *Id.* at 1563. These principles are firmly entrenched in Circuit jurisprudence.[21]

_____

evidentiary support and cannot be credited on summary judgment. There are simply no record facts that might support a reasonable inference that Longmire was denied the procedural due process requirement of an unbiased decisionmaker at any point in the administrative process.

[21] *See, e.g., Laskar*, 771 F.3d at 1300 ("even if a plaintiff suffered a procedural deprivation at his administrative hearing, there is no procedural due process violation if the state makes available a means to remedy the deprivation"); *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) ("Assuming a plaintiff has shown a deprivation of some right protected by the due process clause, we – when determining if a plaintiff has stated a valid procedural due process claim – look to whether the available state procedures were adequate to correct the alleged procedural deficiencies. … [T]o be adequate, … the state procedure must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due.") (citations omitted); *Ingalls v. U.S. Space and Rocket Center*, --- Fed.Appx. ----, 2017 WL 629258, *7 (11th Cir. Feb. 16, 2017) ("The governing due process inquiry focuses only on whether state remedial process compensates litigants for the alleged loss they have suffered. … As the former employees concede, their Alabama state court litigation provides adequate process against the Commission executives for their alleged losses. The former employees' due process claim therefore cannot withstand the Commission executives' motion to dismiss."); *Duva v. Board of Regents of the University System of Georgia*, 654 Fed.Appx. 451, 455 (11th Cir. June 24, 2016) ("Even if we accept that Duva has alleged sufficiently a deprivation of a due process right, a (Continued)

Alabama Local Act 470 creates a specific mechanism for remedying any procedural deprivations that may occur at the Personnel Board hearing level. In particular, the Act provides as follows:

> "Orders of the Personnel Director and Personnel Board may be enforced by mandamus, injunction, quo warranto, or other appropriate proceedings in a court of competent jurisdiction. Any person directly interested, within 14 days, may appeal to the Circuit Court of Mobile County from any order of the board, by filing notice thereof with the board, whereupon the board shall certify to a transcript of the proceedings before it and file the same in court. Only findings of fact of the board contained in the transcript, if supported by substantial evidence adduced before the board or before its Personnel Director after hearing and upon notice to the interested party or parties, and after affording the parties an opportunity to be heard, shall be conclusive on appeal. The issues on appeal shall be made up under the direction of the court within 30 days after the transcript is filed therein, and the trial shall proceed on the evidence contained in the transcript, if it appears therefrom that the evidence was taken after such notice and opportunity to be heard. ***If upon appeal, the court finds that the ruling, order, or action appealed form is unlawful or unreasonable within the meaning of this act, the court shall vacate or modify the same.***"

(Doc. 13-2, at § XXXIV (emphasis added).) Thus, the State of Alabama has created a mechanism for judicial review, whereby an aggrieved employee who has suffered procedural defects at the administrative level before the Personnel Board may obtain judicial review to correct those procedural errors, remedy the deprivation, and make certain that the administrative proceedings conform to all applicable procedural rules. Where violations occur, Alabama courts are empowered to set aside decisions of the Personnel Board or modify them as appropriate.

In the face of these legal principles and the undisputed fact that the State of Alabama provided a remedial process whereby Longmire could obtain judicial review to correct any procedural deprivations (such as biased decision makers or noncompliance with MCPB rules) that might have occurred at the post-disciplinary hearing, plaintiff has made no showing that this remedial process is inadequate. She has not shown that the state refused to provide any remedial procedures, or that the State's procedures were otherwise unavailable to her or inadequate to remedy the alleged procedural deprivations. Nor can she. After all, Longmire was able to (and

---

constitutional due process <u>violation</u> occurs only after the state refuses to provide a process adequate to remedy that procedural deprivation.").

did) appeal the MCPB ruling through the Mobile County Circuit Court, up through the Alabama Court of Civil Appeals, and even sought a writ of certiorari from the Alabama Supreme Court, then made a second trip through the Alabama courts on Rule 60(b) review, raising a plethora of alleged procedural defects as grounds for relief along the way.[22]

It is no effective response to argue – as Longmire does – that (in contrast to Florida procedures at issue in *McKinney*) the Alabama remedial process is inadequate because Local Act 470 does not allow reviewing courts to decide questions of constitutional law, such that she has never been able to present her Fourteenth Amendment due process claims as part of the state remedial process. (*See* doc. 51, at 23-24.) The Alabama judicial review procedures have been deemed adequate by the Eleventh Circuit, even in the face of arguments quite similar to Longmire's. *See, e.g., Bell v. City of Demopolis, Ala.*, 86 F.3d 191, 192 (11th Cir. 1996) ("Alabama courts, however, like Florida courts, review employment termination proceedings both to determine whether they are supported by substantial evidence and to see that the proceedings comport with procedural due process. … [I]n this case, the state offers an adequate remedy in the form of administrative as well as state court review.").[23]

---

[22]     As defendants MCPB and Dees aptly observe in their summary judgment brief, "The adequacy of a state remedial process from the review of Personnel Board decisions is not hypothetical – Longmire actually used it. She simply lost." (Doc. 53, at 7 n.8.)

[23]     *See also Bonner v. Kilgore*, 2017 WL 1057633, *10 (N.D. Ala. Mar. 21, 2017) ("Plaintiff is simply incorrect in his assertions that the Alabama courts lack the power to remedy deficiencies or cure violations of due process in employment termination cases like this one, where it is alleged that bias on the part of a personnel board tainted its post-termination hearing decision. … [T]he Eleventh Circuit held in *Bell* that Alabama's post-deprivation remedies and standards of judicial review in this context are not materially distinguishable from the Florida state remedies sanctioned as adequate in *McKinney*."); *Holden v. City of Sheffield*, 2017 WL 34848, *4-5 (N.D. Ala. Jan. 4, 2017) ("Ms. Holden seeks to distinguish *McKinney* because Alabama state courts have a much more limited standard of review than the practically *de novo* standard utilized by Florida courts. However, the Eleventh Circuit has rejected this precise argument. … Alabama circuit courts have the power to ensure that the pre-termination proceeding comported with procedural due process, and a circuit court could remedy the alleged procedural deprivation by ordering a new hearing be held."); *Langford v. Hale County, Alabama Com'n*, 2014 WL 2890323, *7 (S.D. Ala. June 26, 2014) ("In Alabama, a claimant can file a common law writ of *certiorari* to seek review of a perceived wrongful termination because of a due process violation. … Accordingly, Defendants' Motion to Dismiss … is due to be granted as to Langford's claim that she was denied due process in her post-termination proceedings because Langford has a remedy for her claim in the state courts.").

More fundamentally, recall that Longmire's Fourteenth Amendment due process objections to her post-disciplinary hearing in this litigation deal mostly with allegations that MCPB and Dees violated MCPB rules. (*See, e.g.*, doc. 51, at 1.) Alabama courts unquestionably have authority during the administrative appeal process to adjudicate allegations that the post-disciplinary hearing contravened applicable Personnel Board rules. That Longmire restates and reformulates those claims for non-compliance with MCPB rules in constitutional terms in this action in no way diminishes the effectiveness or adequacy of the state remedial process to provide a remedy for those procedural defects by ruling directly on whether the MCPB rules were violated, whether the decision maker was biased, and so on.[24]

There is one exception to the foregoing analysis. In her summary judgment briefs, Longmire insists that "the issue whether Rule 14.3(a) complies with due-process guaranties is squarely before this Honorable Court." (Doc. 51, at 25.) This premise is not backed by citations to the record, and the Court has reviewed the pleadings in vain for any indication that Longmire has <u>ever</u> asserted a claim in this action that MCPB Rule 14.3(a) violates the Fourteenth Amendment by allowing a municipal official to decide an employee's discipline without attending the disciplinary hearing. Such a claim simply does not appear in the Complaint and has not been joined in this litigation.[25] Of course, a litigant cannot amend her complaint through

---

[24]    Stated differently, Longmire has balked that the state remedial process is inadequate because her "Constitutional challenges cannot be made on a Section XXXIV appeal to the Court – so much for *McKinney*." (Doc. 51, at 24.) The reason this argument fails is that, as discussed at great length *supra*, most or all of what Longmire calls "constitutional" challenges in this case are simply claims that the City, the MCPB and Dees failed to adhere to Personnel Board rules. Without question, the Alabama remedial process encompasses judicial review of claims that applicable rules were violated; therefore, that process is adequate to address the very violations that Longmire identifies in this action, albeit from the standpoint of procedural deficiencies that contravene applicable rules rather than from a constitutional perspective. That Longmire is recasting her claims of rule violations from the administrative appeal process as claims for constitutional violations in this action in no way negates the ability of the state courts to adjudicate the underlying issues (*i.e.*, whether the rules were violated or not).

[25]    To the contrary, Longmire's Complaint asserts that defendants violated Rule 14.3(a) because "[a]t no time did Mayor Stimpson 'designate a representative' to hold a pre-disciplinary hearing." (Complaint, ¶ 8.) Far from trying to strike down this aspect of Rule 14.3(a), then, Longmire's Complaint reflects that she was trying to <u>enforce</u> it. The same is true of Longmire's brief filed in response to the City Defendants' Rule 56 Motions, wherein she asks this Court to enforce (not declare unconstitutional) the portion of Rule 14.3(a) that "requires the (Continued)

summary judgment briefing.  *See, e.g., GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012) ("It is well-settled in this circuit that a plaintiff may not amend the complaint through argument at the summary judgment phase of proceedings."); *Kirksey v. Schindler Elevator Corp.*, 2016 WL 6462176, *4 (S.D. Ala. Oct. 28, 2016) (similar).  Therefore, the Court rejects plaintiff's argument that she has asserted a viable § 1983 claim in this action, and specifically finds that Longmire has not brought a claim that Rule 14.3(a) violates the Due Process Clause insofar as it allows the disciplinary decision maker to be absent from the hearing room.[26]

In short, plaintiff's Fourteenth Amendment due process claims relating to her post-disciplinary hearing fail as a matter of law because there is no evidence that the March 6 hearing fell short of the Fourteenth Amendment's minimum procedural requirements.  Even if such evidence did exist, dismissal of the § 1983 claim would still be warranted because the State of Alabama has made available an adequate remedy to cure the procedural deprivations about which she complains.

---

employee be given the opportunity to present her side to 'the official, or designated representative of the official charged with the responsibility of making the disciplinary decision.'"  (Doc. 47, at 19.)  Plaintiff may not retool her claims on the fly during the summary judgment briefing process, taking inconsistent positions from one brief to the next based on the expediencies of the moment.

[26]    That said, the Court recognizes that even if Longmire had in fact asserted a claim in this action that Rule 14.3(a) violates the Due Process Clause, such a claim would be outside the available Alabama remedial process because it is a constitutional issue that state courts would lack jurisdiction to address in the administrative appeal process.  *See, e.g., Galbreath v. Hale County, Alabama Commission*, 2017 WL 457197 (S.D. Ala. Feb. 1, 2017) (observing that "a constitutional attack on the policy itself would not be barred by *McKinney* and *Bell*"); *Peacock v. City of Elba*, 1997 WL 1068632, *5 (M.D. Ala. Mar. 27, 1997) (distinguishing *McKinney* and *Bell* because "the plaintiff challenges the review system (or lack thereof), a procedural protection over which the State has control, rather than simply challenging the system as it was applied to him").  Even then, however, the Court would reject that claim (had Longmire brought it, which she did not) on the merits (*i.e.*, the undersigned would rule that Rule 14.3(a) does not violate the Fourteenth Amendment in the manner asserted by plaintiff) based on the discussion set forth in footnote 18, *supra*.

### D.     Other Claims/Theories of Liability.

The foregoing discussion is dispositive of Longmire's § 1983 due process claim.  There are no genuine issues of material fact, and the Court finds as a matter of law that (i) plaintiff's Fourteenth Amendment claims are not actionable insofar as she is complaining about violations of Mobile County Personnel Board rules and regulations; (ii) the pre-disciplinary hearing satisfied minimum procedural due process requirements prescribed by the U.S. Constitution; and (iii) plaintiff's claims relating to post-disciplinary hearing due process violations are not actionable because that hearing comported with Fourteenth Amendment requirements and, even if it did not, the State of Alabama provided an adequate remedial process.  These rulings dispose of most of Longmire's claims asserted in the Complaint; however, the Court will separately address her remaining theories of liability, namely, claims of failure to train against the City Defendants, claims of a policy/custom of constitutional deprivations by the City Defendants, and state-law constitutional claims against all defendants.

First, Longmire has attempted to assert § 1983 failure-to-train claims against all defendants, based on their failure to provide training relating to the MCPB rules and regulations.[27]  It is well-settled that "under § 1983, a supervisor can be held liable for failing to train his or her employees only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact."  *Keith v. DeKalb County, Georgia*, 749 F.3d 1034, 1052 (11th Cir. 2014) (citations and internal quotation marks omitted). "But a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train."  *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1328 (11th Cir. 2015) (citation and internal marks omitted).  The record lacks any evidence of a pattern of violations, or any other facts that might support a finding of deliberate indifference.  More fundamentally, Longmire has identified no authority or legal principle that might confer upon her a constitutional right to receive "necessary personnel training related to the Rules of the Mobile County Personnel Board."  (Complaint, ¶

---

[27]     In the Complaint, Longmire articulates this claim as follows: "Defendants failed to provide Plaintiff Longmire – and most if not all employees; with necessary personnel training related to the Rules of the Mobile County Personnel Board whose provisions outline employee mandated rights as further protected by State Statutes, and furthermore, Defendants were charged to provide training and access to such Rules and Regulations."  (Complaint, ¶ 15.)

15.)  As discussed *supra*, due process requires notice, and the notice provided to Longmire in this case was constitutionally adequate.  The Fourteenth Amendment does not require that defendants furnish training to Longmire and other employees relating to disciplinary hearing protocols and policies, provided that adequate notice is given (which it was).

Second, to the extent that Longmire is bringing a § 1983 claim against the City of Mobile, well-settled law requires that she identify a municipal policy or custom that caused the injury.  *See, e.g., Hill v. Cundiff*, 797 F.3d 948, 977 (11th Cir. 2015) (in § 1983 action, municipality "may be held liable only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law") (citations and internal quotation marks omitted); *Johnson v. Dixon*, 666 Fed.Appx. 828, 830 (11th Cir. Nov. 29, 2016) ("A plaintiff seeking to hold a municipal actor liable under 42 U.S.C. § 1983 must prove that official municipal policy was responsible for the action that caused his injury.").  Plaintiff identifies no evidence of any such municipal policy or custom, but simply speculates that the actions of which she complains must have been taken pursuant to a policy or custom, or else they would have been purely arbitrary and capricious.  (*See* doc. 47, at 21.)  Such a conclusory argument is not an acceptable substitute for record evidence, and does not create a genuine issue of material fact.  Moreover, the Court has already held that the City of Mobile did not violate Longmire's constitutional rights.  In the absence of a constitutional violation, the City can have no § 1983 municipal liability based on its policies and customs, as a matter of law.  *See, e.g., Penley v. Eslinger*, 605 F.3d 843, 855 (11th Cir. 2010) ("Because we hold that Lieutenant Weippert did not deprive Mr. Penley of a constitutional right, it is unnecessary for us to evaluate the constitutionality of Sheriff Eslinger's use of force policy."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1171 (11th Cir. 2009) ("Absent a constitutional violation, we need not explore whether PBSO's policies regarding crisis intervention training violated Garczynski's constitutional rights.").  For all of these reasons, Longmire's efforts to establish § 1983 municipal liability against the City based on a custom or policy of procedural due process violations fail as a matter of law.

Third, aside from her § 1983 procedural due process claim, Longmire's Complaint asserts a state-law due process claim as Count Two.  This claim proceeds on the same grounds and theories as plaintiff's federal due process claim.  (*See* Complaint, ¶¶ 26-30.) Count Two adds

nothing of substance to Longmire's claims and is due to be dismissed for precisely the same reasons that her federal due process claims are not viable. The Alabama Supreme Court has explained that "[t]his Court has consistently interpreted the due process guaranteed under the Alabama Constitution to be coextensive with the due process guaranteed under the United States Constitution." *Vista Land and Equipment, LLC v. Computer Programs & Systems, Inc.*, 953 So.2d 1170, 1174 (Ala. 2006); *City of Orange Beach v. Duggan*, 788 So.2d 146, 150-53 (Ala. 2000) (looking to *Loudermill* and other federal authorities interpreting Due Process Clause of U.S. Constitution to evaluate merits of procedural due process claim asserted under Alabama Constitution).[28] In response to these arguments and authorities, plaintiff does not assert (much less cite authority to support the proposition) that the Alabama Constitution's procedural due process protections afforded to her are somehow greater or different than those provided under the Fourteenth Amendment. Thus, the summary judgment analysis is identical for Count One and Count Two. Plaintiff having failed to present a viable federal constitutional claim for deprivation of her procedural due process rights, her state-law constitutional due process claim is likewise properly dismissed for the same reasons.

## V.  Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1.      The City Defendants' Motion for Summary Judgment (doc. 36) is **granted**;

---

[28]      *See also Limestone County Dep't of Human Resources v. Long*, 182 So.3d 541, 545 (Ala.Civ.App. 2014) ("Our supreme court has interpreted the due process guaranteed under the Alabama Constitution to be coextensive with the due process guaranteed under the United States Constitution. … Alabama's constitution does not afford a state agency any additional right to due process not found in the federal constitution.") (citation and internal quotation marks omitted); *Alabama State Personnel Bd. v. Hardy*, 27 So.3d 540, 551 n.2 (Ala.Civ.App. 2008) ("neither party argues that the protection of procedural due process in the Alabama Constitution is qualitatively different or quantitatively more expansive than that provided in the United States Constitution as those provisions relate to the present case"); *Heard v. Hannah*, 51 F. Supp.3d 1129, 1145 (N.D. Ala. 2014) ("Plaintiff's failure to allege facts showing that he had an employment contract or any other basis for a legitimate expectation of continued employment as required to establish a federal due process claim under § 1983 also calls for the dismissal of any parallel due process claim arising [under] state law."); *Young v. City of Mobile*, 2014 WL 5488827, *7 (S.D. Ala. Oct. 29, 2014) (recognizing Alabama authorities holding that due process guaranteed under Alabama Constitution is coextensive with that guaranteed under U.S. Constitution, and finding that plaintiff "cannot establish a due process violation under the U.S. Constitution or the Alabama Constitution of 1901").

2.      Defendant Dees' Motion for Summary Judgment (doc. 37) is **granted**;

3.      Defendant Mobile County Personnel Board's Motion for Summary Judgment (doc. 39) is **granted**;

4.      Plaintiff's Motion for Partial Summary Judgment (doc. 44) is **denied**;

5.      There being no genuine issues of material fact as to any claim or cause of action asserted herein, plaintiff's claims against all defendants are **dismissed with prejudice**; and

6.      A separate Judgment will enter.

DONE and ORDERED this 10th day of April, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE