# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| CARLA LONGMIRE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF MOBILE, ALABAMA, *et al.*, )<br>)<br>Defendants. ) | CIVIL ACTION 16-0025-WS-M |

## ORDER

This matter comes before the Court on Plaintiff's Motion to Alter or Amend (doc. 64).

Plaintiff, Carla Longmire, is a City of Mobile police officer who sued the City, the Mayor, the Chief of Police, the former Assistant Chief of Police, the Mobile County Personnel Board, and the Board's former Personnel Director after being demoted for having sexual relations with a subordinate police officer on duty. In this action (one of two lawsuits she has pursued to challenge her demotion), Longmire maintains that defendants violated her procedural due process rights under the U.S. Constitution and the Alabama Constitution in connection with her disciplinary proceedings. On April 10, 2017, after extensive briefing (including nearly 100 pages of briefs filed by plaintiff alone), the undersigned entered a 31-page Order (doc. 62) and Judgment (doc. 63) granting defendants' motions for summary judgment and dismissing this action with prejudice.

Now Longmire (by and through counsel of record) has filed a 30-page motion to reconsider, in which she attacks the April 10 Order in myriad respects. Longmire presents her arguments in a manner that evinces hostility toward this Court, lack of familiarity with record facts and governing law, and a propensity to distort and misstate the April 10 Order. It would be neither an efficient nor a constructive use of stretched judicial resources to engage in a comprehensive point-by-point refutation of this misguided Motion; however, the undersigned has identified, and will address herein, some of the more egregious errors.

**I.     Rule 59(e) Standard.**

As a preliminary matter, plaintiff's sprawling filing devotes a bare two lines to the stringent legal standard governing her Motion. She appears heedless of the black-letter principle that motions for reconsideration are a disfavored, extraordinary remedy that must be employed sparingly. *See, e.g., Iberiabank v. Case Construction, LLC*, 2015 WL 5457889, *2 (S.D. Ala. Sept. 16, 2015) ("Motions to reconsider are disfavored in federal court and are granted only in narrowly circumscribed circumstances.").[1] Authority is legion for the proposition that motions to reconsider "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 128 S.Ct. 2605, 2617 n.5, 171 L.Ed.2d 570 (2008) (citation omitted). Rule 59(e) does not afford an unsuccessful litigant "two bites at the apple." *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985). Nor are such motions properly filed "as a kneejerk reaction by a dissatisfied federal court loser." *Lee v. Thomas*, 2012 WL 3137901, *2 (S.D. Ala. Aug. 1, 2012); *Hughes v. Stryker Sales Corp.*, 2010 WL 2608957, *2 (S.D. Ala. June 28, 2010) (rejecting notion that motions to reconsider "are appropriate whenever the losing party thinks the District Court got it wrong"). "They are neither appeal substitutes nor a 'dry run' to test arguments in anticipation of a forthcoming appeal." *Lee*, 2012 WL 3137901, at *2. "A Rule 59(e) motion is not a chance for a party to correct poor strategic choices, nor are such motions to be used by litigants to cry over spilled milk." *U.S. E.E.O.C. v. St. Joseph's Hospital, Inc.*, 842 F.3d 1333, 1349 (11th Cir. 2016) (citation omitted).

As a general proposition, motions to reconsider are permissible "only when one of the following has occurred: an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Longcrier v. HL-A*

---

[1] *See also Longcrier v. HL-A Co.*, 595 F. Supp.2d 1218, 1246 (S.D. Ala. 2008) ("[I]n the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly.") (citations omitted); *Garrett v. Stanton*, 2010 WL 320492, *2 (S.D. Ala. Jan. 18, 2010) ("Far too often, litigants operate under the flawed assumption that any adverse ruling on a dispositive motion confers upon them license to move for reconsideration, vacatur, alteration or amendment as a matter of course, and to utilize that motion as a platform to criticize the judge's reasoning, to relitigate issues that have already been decided, to champion new arguments that could have been made before, and otherwise to attempt a 'do-over' to erase a disappointing outcome. This is improper.").

*Co.*, 595 F. Supp.2d 1218, 1247 (S.D. Ala. 2008) (citations and internal punctuation omitted); *see also United States v. Marion*, 562 F.3d 1330, 1335 (11th Cir. 2009) ("The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact.") (citation and internal marks omitted). None of Longmire's arguments come close to satisfying the "manifest errors of law or fact" test.

## II.   Longmire's Assignments of Error Relating to Facts.

Longmire spends the first 13 pages of her Motion to Alter or Amend quarreling with the factual and procedural background set forth in the April 10 Order. Such a stratagem is puzzling, at best. Recall that the Complaint asserts procedural due process claims relating to notice and disciplinary proceedings. We know what notice was provided to Longmire because the written notices are part of the summary judgment record. (*See, e.g.,* docs. 13-4, 13-5, 13-7.) And we know what happened during the disciplinary proceedings because the transcripts of those hearings are also in the record. (*See* docs. 18-2, 18-6.) Insofar as Longmire's state-court appellate proceedings challenging the demotion decision are relevant, we have written rulings from the state courts documenting their decisions and the grounds upon which they rest. (*See, e.g.,* docs. 13-8, 34-2, 34-3, 34-4, 54 at Exh. A.) And the Personnel Board Rules and Regulations are also a matter of record. (*See* doc. 13-3.) The point is simple: the summary judgment record clearly chronicles the events that Longmire claims were inimical to her constitutional right to procedural due process. It is no wonder, then, that the April 10 Order observed from the outset that "[t]he material facts for all four pending summary judgment motions are largely uncontested." (Doc. 62, at 3 n.2.) In most material respects, we know from these objective exhibits exactly what process was or was not given. The only question remaining in this case is whether that process comported with constitutional guarantees.

None of these realities dissuade Longmire from railing for pages on end that the April 10 Order's summary of the facts is "highly prejudicial," "chose between conflicting testimony," engaged in a "judgmental assessment," violated Rule 56 "in material and fatal ways," and a litany of other inflammatory characterizations. Plaintiff's objections in this regard miss the mark by a wide margin. Several examples will illustrate the point.[2]

---

[2] For starters, Longmire purports to be aggrieved by the April 10 Order's use of the term "littered" in stating that Count One of her Complaint was "littered with allegations" that
(Continued)

First, plaintiff complains that the April 10 Order did not consider the Declaration of Carla Longmire (doc. 18-1) – inaccurately referred to as an "Affidavit" throughout the Rule 59(e) Motion – but instead proceeded "as if Longmire never submitted a single piece of paper." (Doc. 64, at 5.) The April 10 Order did not cite the Longmire Declaration not because the Court failed to review it, but because the overwhelming majority of that exhibit was unhelpful. In her 33-paragraph Declaration, Longmire held forth about what the December 10 Notice said and did not say. Of course, the summary judgment record contains a true and accurate copy of the December 10 Notice; therefore, a Declaration from Longmire as to its contents is superfluous. Similarly, the Longmire Declaration includes numerous averments about what did or did not happen at the pre-disciplinary hearing; what her demotion letter did or did not say; and what did or did not happen at the post-deprivation hearing. All of those transcripts and notices are part of the summary judgment record; therefore, Longmire's Declaration is pointless insofar as it retreads that ground.

Second, in an oft-echoed refrain, plaintiff's Rule 59(e) Motion accuses the Court of making credibility determinations and crediting the Affidavit of Donald Dees over the Longmire Declaration, all in derogation of basic Rule 56 principles. (Doc. 64, at 2, 3, 4, 6, 7, 12, 20.) Let us be clear. The April 10 Order cited the Dees Affidavit (doc. 13-1) for the limited purpose of his averments that when Longmire appealed her demotion, Dees made certain determinations (*i.e.*, that Longmire had received advance written notice of the pre-disciplinary hearing, that the notice specified the factual allegations against her, that the Mayor demoted her, that Longmire was given notice of her demotion, and that her appeal was timely) and set the matter for a *de*

---

defendants violated Personnel Board Rule 14.3. (Doc. 64, at 3, 7.) The Court used that descriptor intentionally. Regrettably, counsel elected to plead Count One – and to litigate this case – in a jumbled, everything-but-the-kitchen-sink manner. Such a "throw everything against the wall and see what sticks" approach to pleading, as opposed to winnowing down the claims and causes of action to focus on those (if any) that have or might have colorable merit, resulted in the needless expenditure of a great deal of litigant and judicial resources to separate wheat from chaff and to drill down to what the case is really about. The April 10 Order's use of the term "littered" was a mild way for the Court to express frustration with such a wasteful, inefficient tactic that needlessly multiplied and proliferated this litigation. In any event, it was in no way indicative of a "manifest error of law or fact" for the Court to describe Longmire's unfocused, scattershot, moving-target pleading in that manner.

*novo* hearing before the Personnel Board. (Doc. 62, at 6.) The Longmire Declaration contradicts none of this. To the contrary, the Longmire Declaration admits that she received written notice of a disciplinary hearing on December 10, 2013, six days in advance. (Longmire Decl., ¶ 4.) The Longmire Declaration does not deny that the December 10 Notice specified the factual allegations against her. The Longmire Declaration does not deny that an "Official Notice of Demotion" on the letterhead of "The City of Mobile, Alabama Office of the Mayor" and purportedly bearing the signature of "William S. Stimpson, Mayor" was provided to her on or about December 17, 2013; to the contrary, she admits that the record contains an accurate copy of that letter. (Longmire Decl., ¶ 10.).[3] And the Longmire Declaration acknowledges that she appealed from that demotion decision. (*Id.*, ¶ 23.) In light of the foregoing, plaintiff's repeated insistence that the Court made credibility determinations favoring the Dees Affidavit over the Longmire Declaration is divorced from reality.[4]

Third, the Rule 59(e) Motion protests that the April 10 Order made passing reference to facts and testimony derived from the hearing transcripts, such as Longmire's admission in the pre-disciplinary hearing that she had sexual contact with Officer Latham while he was on duty, her guilty pleas to both disciplinary charges, Assistant Chief Kennedy's testimony that Longmire and Officer Latham's conduct was "the worst thing I can possibly imagine," his explanation for not firing her, and so on. Longmire characterizes these references as "highly prejudicial," "highly inflammatory," "beyond an abuse of discretion," and "highly misplaced," and says the

---

[3] To be sure, the Longmire Declaration does state "there has been no testimony from the mayor at any administrative proceeding confirming that he actually signed the letter." (Longmire Decl., ¶ 10.) This statement does not create a genuine issue of material fact as to whether Mayor Stimpson actually demoted her, nor does it undermine Dees' averment that he made a determination (whether Longmire concurs with that determination or not) that Mayor Stimpson had demoted Longmire.

[4] Relatedly, the Rule 59(e) Motion expresses indignation that, given Dees' failure to state in his affidavit that "the Appointing Authority complied with MPCB Rule 14.3" or that "the hard and mandatory timeline was actually completed," the April 10 Order could "arrive at the position it did" within Section II.C. (Doc. 64, at 7.) This line of attack is inscrutable. Nowhere in Section II.C. did this Court make any normative finding as to whether Dees had satisfied any temporal requirements of Personnel Board rules or whether the Appointing Authority had complied with MCPB Rule 14.3. Thus, Longmire's Rule 59(e) Motion castigates the April 10 Order for making factual findings that it simply did not make.

Court "seemed highly concerned over the alleged merits of the charges" rather than the constitutionality of the process. (Doc. 64, at 2, 4, 5, 8.)[5] The passages of the April 10 Order to which Longmire takes such umbrage were in a section labeled "Factual and Procedural Background." Thus, they were included in a background discussion of the disciplinary proceedings against Longmire. The clear focus of that discussion was on the procedural aspects of the disciplinary process; however, there is nothing improper (much less "highly prejudicial") about the summary judgment order mentioning record facts concerning substantive testimony and the outcome of those hearings, as a means of placing the procedural dispute in context. The April 10 Order did not – and this Court does not – make any findings or express any opinion as to whether Longmire was or was not guilty of the conduct to which she admitted, whether such conduct was as reprehensible as the Trial Board deemed it to be, or whether the City would or would not have been justified in disciplining her more or less severely than it did. This objection is much ado about nothing. Plaintiff's subjective dissatisfaction with certain facts accurately culled from the record and mentioned in the April 10 Order is a far cry from establishing the stringent "manifest error of law or fact" legal standard governing this Rule 59(e) Motion. Her claims of prejudice and impropriety are wholly unfounded.

Fourth, Longmire's Rule 59(e) Motion oddly takes the April 10 Order to task for not crediting Longmire's Declaration that Mayor Stimpson did not attend the pre-disciplinary hearing. (Doc. 64, at 3.) Plaintiff is invited to review page 4 of the April 10 Order, which states as follows: "Mayor Stimpson (the ultimate decision maker) did not attend." (Doc. 64, at 4.) In the same vein, plaintiff theorizes that the record does not show that the December 10 Notice "came from Stimpson either" and that "[w]e don't even know if Stimpson actually signed the demotion letter." (Doc. 64, at 3-4.) On its face, the December 10 Notice is captioned as being sent to Longmire from "Mayor William S. Stimpson (Designated Appointing Authority)" (doc. 13-4). Likewise, as noted *supra,* the December 17 demotion letter is on letterhead from the

---

[5] Indeed, Longmire even insinuates that the April 10 Order invented facts by quoting Kennedy's testimony that the Trial Board "didn't fire her because probably of her length of service" and citing pages 69-70 of Doc. 13-6, when "[i]f Counsel is correct this quote does not appear on those pages." (Doc. 64, at 10.) Counsel is not correct. Doc. 13-6 is the transcript of the March 6, 2014 hearing. On line 23 of numbered page 69 of that transcript, continuing on to the first line of numbered page 70 of that transcript, Kennedy testified as follows: "And I guess that we didn't fire her because probably of her length of service." (Doc. 13-6, at 69-70.)

Office of the Mayor, City of Mobile, Alabama, and purports to be signed by "William S. Stimpson, Mayor" (doc. 13-5). Plaintiff has offered nothing other than wild speculation and reckless innuendo that those documents were falsified or forged as part of an ill-defined nefarious plot against her. Such unfounded supposition, devoid of any factual predicate, does not create a genuine issue of material of fact on summary judgment, much less give rise to a "manifest error of law or fact" warranting reconsideration.

Fifth, with respect to the post-deprivation hearing, plaintiff complains that the April 10 Order stated, "Longmire had an opportunity to put on testimony and evidence at the MCPB hearing; but just stimulated to the charges." (Doc. 64, at 10.) No such statement appears in the April 10 Order; indeed, the Court does not understand what plaintiff might mean by "stimulated to the charges," and certainly made no such finding. At any rate, the April 10 Order accurately stated that "[a]fter the City rested, Longmire's counsel had an opportunity to put on testimony and evidence at the MPCB hearing," but that he declined to do so. (Doc. 62, at 8.) The summary judgment record confirms that is precisely what occurred at Longmire's post-deprivation hearing before the Personnel Board. Insofar as Longmire faults the April 10 Order for failing to "acknowledge[] the reasons" for her counsel's strategic decision not to present evidence or testimony at that hearing (doc. 62, at 8), the April 10 Order contained no such acknowledgment because the Court does not know, and declines to speculate, why counsel might have selected that course of action. Longmire now says the reason for her counsel's inaction at the hearing was as follows: "[W]hat chance did Longmire have before such an alleged impartial body? A 'sham hearing' is nothing more than a 'sham hearing'." (Doc. 64, at 10.) To be clear, the Court has been presented with <u>no</u> evidence supporting a reasonable inference that Longmire's March 6, 2014 hearing before the MCPB was a "sham." To be sure, counsel asserted certain procedural objections at the outset of that hearing and moved for dismissal on that basis. The Personnel Board found no procedural violations and denied the motions to dismiss. Such adverse rulings, in the circumstances presented here, do not raise a reasonable inference that the hearing was a sham or that the Board was biased against Longmire. The Court therefore rejects the suggestion in her Rule 59(e) Motion that the April 10 Order merits

reconsideration because her post-deprivation hearing was a "sham."[6] If Longmire chose not to avail herself of the opportunity she was given to present substantive evidence at the post-deprivation hearing because she or her counsel decided that the hearing was a "sham," then she did so at her peril and must bear the consequences of that choice.

Sixth, Longmire's Rule 59(e) Motion somehow criticizes the April 10 Order's factual overview of the state-court rulings as to her appeals from the Personnel Board decision. (Doc. 64, at 10-13.) Remarkably, Longmire does not suggest that the April 10 Order inaccurately summarizes what the state courts did, but rather rebukes this Court for not finding – in the "Factual and Procedural Background" section of the summary judgment ruling – that the state courts were wrong in their interpretation of Alabama authority. This objection is frivolous. It was not a "manifest error of law or fact" for the April 10 Order to summarize the state-court appellate proceedings in the fact section of a summary judgment ruling. That section of the Order offered no opinion as to whether state court rulings were accurate or erroneous, but simply recounted what they decided and on what grounds.

### III. Longmire's Assignments of Error Relating to Legal Analysis.

From the inception of this case, Longmire has pursued the legal theory that violations of Mobile County Personnel Board Rules necessarily equate to violations of the Due Process Clause of the Fourteenth Amendment. She says the defendants did not follow certain MCPB procedural rules as to the notice and conduct of her disciplinary hearings. And she says that each divergence from those procedural rules is a Fourteenth Amendment violation. To Longmire's way of thinking, the process that she is owed under the U.S. Constitution is defined not by the Constitution, but by the MCPB rules; thus, she would have this Court hold that the MCPB rules

---

[6] In that same section of her Rule 59(e) Motion, Longmire highlights authority for the proposition that at a post-deprivation hearing, an employee must be afforded an opportunity "to confront and cross-examine adverse witnesses." (Doc. 64, at 10.) This is a red herring. Plaintiff's Motion identifies no facts that might support a determination that she was forbidden or restricted from confronting or cross-examining the City's witnesses against her at that hearing. To the contrary, the transcript confirms that Longmire (by and through counsel) was allowed to confront and cross-examine the City's witnesses at the Board hearing without restrictions. The fact that she was not permitted to call certain non-merits witnesses to make a showing of perceived procedural violations, where the MCPB had concluded no such procedural violations existed, in no way impairs her right of confrontation and cross-examination as to those witnesses whose testimony supported the disciplinary action taken against her.

amend the U.S. Constitution by engrafting heightened constitutional due process requirements on public employee disciplinary proceedings.

The April 10 Order explained at great length why this Court views Longmire's legal theory as demonstrably incorrect and invalid.[7] It cited case after case after case refuting plaintiff's faulty premise that violations of state procedural rules are tantamount to due process violations. (Doc. 62, at 14-16.) And it set forth the reasons why Longmire's claim to a property interest in MCPB procedural rules is simply wrong. In her Rule 59(e) Motion, Longmire devotes nearly five pages to block quotations from *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) and *Stallworth v. City of Evergreen*, 680 So.2d 229 (Ala. 1996), apparently to challenge that aspect of the April 10 Order. The Court previously reviewed these decisions and found them not to support plaintiff's position. The Court remains of that view today. Neither case holds that a public employee has a viable Fourteenth Amendment claim to enforce state procedural rules creating safeguards above and beyond the constitutional minimum.

Moreover, Longmire's *Loudermill* argument in her Rule 59(e) Motion is, on its face, grounded in the erroneous notion that "[i]t is a fact that Longmire never received benefit of a 'full evidentiary' post-deprivation hearing as the State refused to provide one." (Doc. 64, at 16.) No such "fact" exists here; rather, the record unequivocally establishes that Longmire did receive the benefit of a full evidentiary post-deprivation hearing, but that she and her lawyer chose not to

---

[7] It also explained that, even if Longmire were correct that violations of local procedures are automatically Fourteenth Amendment due process violations, summary judgment would remain proper because Alabama courts have fully and finally determined that no violations of those MCBP procedural rules occurred as to Longmire. (*See* doc. 62, at 16-18.) In her Rule 59(e) Motion, Longmire's only rejoinder to this point is that Alabama courts lack jurisdiction to decide constitutional claims and her claims in this case are couched as constitutional claims. (Doc. 64, at 24.) Plaintiff's circular argument misses the point. Alabama courts have decided that the MCPB rules were not violated as to Longmire's disciplinary proceedings. Plaintiff does not and cannot dispute that Alabama courts had jurisdiction to decide those questions (*i.e.*, whether MCPB rules were or were not followed here). Applicable law precludes Longmire from relitigating those issues (or effectively appealing them to federal court) under the guise of repackaged constitutional claims. In other words, there being a final order from the state courts determining that the MCPB rules were not violated, Longmire is barred from pursuing constitutional claims in this action predicated on the very violations of MCPB rules that Alabama courts have ruled never happened. The April 10 Order so held, and Longmire has identified no colorable basis for reconsideration of that ruling.

present evidence or testimony at that hearing. That the MCPB declined to permit Longmire to call witnesses who had no substantive testimony to offer as to the reasons for her demotion, whom Longmire wished to call solely to complain about perceived violations of MCPB rules at the pre-disciplinary hearing, in no way impairs the sufficiency or adequacy of the post-deprivation hearing for Fourteenth Amendment due process purposes. Plaintiff identifies nothing other than her own *ipse dixit* to the contrary. That is not a viable basis for the extraordinary remedy of Rule 59(e) relief.[8]

---

[8] Longmire's Rule 59(e) Motion reads for all the world that she is claiming a property interest in the specific procedures conferred by MCPB rules. Indeed, she insists that the "MCPB Rules rise to the level of 'Constitutional Requirements' because once provided they cannot be taken away without due process." (Doc. 64, at 19.) The glaring defect in this reasoning is laid bare by *Loudermill* itself, in which the Supreme Court set forth the following admonition (omitted, oddly enough, from Longmire's block quotation on page 15 of the Rule 59(e) Motion): "[T]he Due Process Clause provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures. ***The categories of substance and procedure are distinct.*** … '***Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty***." *Loudermill*, 470 U.S. at 541 (emphasis added); *see also Olim v. Wakinekona*, 461 U.S. 238, 250 & n.12, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (observing that "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause" and that "[p]rocess is not an end in itself"); *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 771, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005) (Souter, J., concurring) ("Gonzales claims a property interest in a state-mandated process in and of itself. This argument is at odds with the rule that process is not an end in itself."); *Stem v. Gomez*, 813 F.3d 205, 211 (5th Cir. 2016) ("a property interest cannot be defined by the procedures provided for its deprivation"); *Elliott v. Martinez*, 675 F.3d 1241, 1245 (10th Cir. 2012) ("an entitlement to nothing but procedure cannot be the basis for a liberty or property interest"); *TriHealth, Inc. v. Board of Com'rs, Hamilton County, Ohio*, 430 F.3d 783, 793 (6th Cir. 2005) ("TriHealth cannot have a protected property interest in the *procedure* itself"); *Neinast v. Board of Trustees of Columbus Metropolitan Library*, 346 F.3d 585, 597 (6th Cir. 2003) ("the fact that Johnson did not follow the Eviction Procedure, standing alone, does not establish a denial of due process"); *Conroe Creosoting Co. v. Montgomery County, Tex.*, 249 F.3d 337, 341 (5th Cir. 2001) ("It is axiomatic that a procedural right can not, in and of itself, give rise to a property interest."); *Montgomery v. Carter County, Tennessee*, 226 F.3d 758, 768 (6th Cir. 2000) ("What the Due Process clauses of the Fifth and Fourteenth Amendments protect[] is 'life, liberty, [and] property,' … not the procedures designed to protect life, liberty, and property."); *Wikberg v. Reich*, 21 F.3d 188, 190 (7th Cir. 1994) ("procedural rights are not rights of liberty or property within the meaning of the due process clause"); *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 34 (6th Cir. 1992) ("no property interest exists in a procedure itself"); *Fleury v. Clayton*, 847 F.2d 1229, 1231 (7th Cir. 1988) ("There is neither a 'liberty' nor a 'property' interest in procedures themselves … and a violation of state law is not a violation of the Constitution."); *Kelley v. Shelby County Bd. of Educ.*, 198 F. Supp.3d 842, 855 (Continued)

As for *Stallworth*, Longmire's reliance is once again misplaced. Plaintiff spends an entire page of her Rule 59(e) Motion block-quoting an excerpt from that decision in which the Alabama Supreme Court indicated that, where a pre-termination hearing is constitutionally flawed, a post-termination hearing "did not remedy and could not have remedied the earlier deprivation of Stallworth's right to a constitutionally adequate pretermination hearing." *Stallworth*, 680 So.2d at 235. This quotation is unilluminating in the context of Longmire's Rule 59(e) Motion, because the April 10 Order never held or declared otherwise. Certainly, nothing in the cited portion of *Stallworth* lends any credence to plaintiff's persistent and legally incorrect theory that, as a matter of constitutional law, "Longmire was due the process as provided by MCPB Rule 14." (Doc. 64, at 17.) Reconsideration is not warranted merely because plaintiff misunderstands, misapplies, and misinterprets the law.[9] Plaintiff is, of course, free to pursue her

---

(W.D. Tenn. 2016) ("State-created procedural rights do not, in themselves, create rights protected by the Due Process Clause of the Fourteenth Amendment, even when the procedure governs situations that explicitly implicate a protected liberty or property interest"); *Norton v. Town of Islip*, 97 F. Supp.3d 241, 266 (E.D.N.Y. 2015) ("state statutes do not create federally protected due process entitlements to specific state-mandated procedures"); *Ferkel v. Board of Education of City of Chicago*, 45 F. Supp.3d 824, 832 (N.D. Ill. 2014) ("Plaintiffs cannot point to a set of procedures and argue that the procedures in and of themselves create a property interest. … In other words, Plaintiffs can have no property interest in procedures; they can only have an interest in property."); *Harris v. City of Chicago*, 665 F. Supp.2d 935, 951 (N.D. Ill. 2009) ("procedure required by contract, statute, or regulation does not create a constitutionally protected right"); *Clark K. v. Willden*, 616 F. Supp.2d 1038, 1041-42 (D. Nev. 2007) ("the Court cannot elevate a state-mandated procedure to a constitutionally protected interest solely because the state procedure is couched in mandatory terms"); *A.S. By and Through Blalock v. Tellus*, 22 F. Supp.2d 1217, 1223 (D. Kan. 1998) ("A person does not have a protected interest in procedures per se."); *Capsalis v. Worch*, 902 F. Supp. 227, 232 (M.D. Fla. 1995) ("It is well known that the mere existence of a procedure for review does not create a property interest."); *Davis v. Alabama State University*, 613 F. Supp. 134, 139 (M.D. Ala. 1985) ("State law and other sources of protected interests do not determine the specific procedures required by the due process clause"). Longmire's argument would obliterate the boundary between substance and procedure, and would define a property interest by reference to state procedures, which is precisely what *Loudermill* and an unbroken line of dozens of other federal authorities prohibit.

[9] Longmire's Rule 59(e) Motion also quotes *Stallworth* at length for the proposition that due process requires an unbiased decisionmaker. (Doc. 64, at 18-19.) But footnote 20 of the April 10 Order specifically acknowledges that "[a]n unbiased decisionmaker is an element of procedural due process," and explains why no inference of bias may reasonably be drawn from
(Continued)

quixotic crusade against well-settled, fundamental principles of constitutional law if she chooses; however, this Court will neither endorse nor encourage those efforts via the extraordinary remedy of Rule 59(e) relief.

Elsewhere in her Rule 59(e) Motion, Longmire suggests that reconsideration is warranted because "Longmire does not believe Rule 14.3(a) is constitutional if it allows the final decision-maker to 'skip the pre-deprivation hearing'." (Doc. 64, at 24.) This ground for relief is unavailing for at least three reasons. First, a litigant is not entitled to Rule 59(e) relief based on a conclusory statement of what she "believes" – untethered to any legal reasoning or citations of authority whatsoever – the law is or should be. Second, the April 10 Order explained that "Longmire has not brought a claim that Rule 14.3(a) violates the Due Process Clause insofar as it allows the disciplinary decision maker to be absent from the hearing room." (Doc. 62, at 27.) Third, the April 10 Order noted the dearth of authorities cited by plaintiff, and the existence of contrary authorities supporting the proposition that a final decision maker's absence from a pre-disciplinary hearing is not a procedural due process violation. (*Id.* at 21 n.18.)[10]

Next, Longmire claims that reconsideration is needed because the April 10 Order would have to "ignore Longmire's Affidavit to say that the Trial Board was the authorized representative of the Mayor." (Doc. 64, at 25.) Yet plaintiff fails to point to a single line in her declaration that might support such a conclusion. The Court has found none. Nor does plaintiff explain how Longmire might have personal knowledge as to whether the Trial Board was or was not the authorized representative of Mayor Stimpson. As such, any statement to that effect in Longmire's Declaration would be properly disregarded for summary judgment purposes. *See* Rule 56(c)(4), Fed.R.Civ.P. ("An affidavit or declaration used to support or oppose a motion ***must be made on personal knowledge*** ….") (emphasis added). Reconsideration is not warranted simply because the Court declined to credit statements that Longmire failed to make in her

---

this record. Thus, any assignment of error that Longmire would derive from this aspect of *Stallworth* is frivolous.

[10] In her Rule 59(e) Motion, Longmire indicates that "[i]t seems that *Loudermill* would think it necessary for the final decision-maker to be present." (Doc. 64, at 27.) However, the cited language from *Loudermill* does not support that proposition, other than through strained logic and wishful thinking.

declaration, and that would have been manifestly improper for lack of personal knowledge if she had made them.

As her Rule 59(e) Motion churns onward, Longmire turns her attention to her assertion that the MCPB hearing was flawed because of a "bias [*sic*] tribunal." (Doc. 64, at 26.) She postures that "[t]he failure to process and produce the Mayor according to law confirms the absence of a fair and just tribunal free of bias." (*Id.* at 27.) But she points to no "law" requiring the MCPB to allow Longmire to question Mayor Stimpson about purely procedural matters pertaining to the pre-disciplinary hearing, all occurring at a post-disciplinary hearing directed at reviewing *de novo* the substance of Longmire's gross misconduct and the disciplinary action imposed. Even if she were correct that the MCPB erred in not allowing her to call the Mayor as a witness, the April 10 Order took pains to explain that an adverse ruling (even if erroneous), without more, does not support an accusation of bias. (*See* doc. 62, at 22 n.20.) Plaintiff has never come forward with any other evidence to bolster her hollow accusation of bias.[11] Moreover, the April 10 Order also explained in substantial detail why any bias at the post-deprivation stage would not give rise to a viable due process claim for Longmire in this litigation because state procedures were adequate to remedy any such deficiencies. (Doc. 62, at 23-25.) Her only rejoinder to that argument is that she disagrees with the Eleventh Circuit's interpretation of Alabama law in *Bell v. City of Demopolis, Ala.*, 86 F.3d 191 (11th Cir. 1996). Be that as it may, there was certainly no "manifest error of law or fact" in this Court's reliance upon *Bell*.

With regard to her "failure to train" claim, Longmire maintains in her Rule 59(e) Motion that "it is difficult to understand the Order's statement about 'the record lacks any evidence.'" (Doc. 64, at 29.) Yet she still points to no evidence – other than her own Declaration – "of a pattern of violations, or any other facts that might support a finding of deliberate indifference." (Doc. 62, at 28.) And she still fails to identify any legal principle conferring upon her a

---

[11] Longmire now says the Court erred by failing to credit her "allegations that the MCPB did not read the 'Motions to Dismiss'" filed by her lawyer before the post-deprivation hearing. (Doc. 64, at 28.) But plaintiff has offered nothing other than rank conjecture as to whether the Board members did or did not review those motions. Even if they did not review them personally, she does not persuasively raise a reasonable inference of bias where the Board members relied on the advice of their counsel (who did review them) in denying said motions.

constitutional right to receive "personnel training respecting the Rules of the MCPB." (Doc. 64, at 29.) Reconsideration of the "failure to train" aspect of the April 10 Order is wholly unwarranted on these grounds.[12]

Lastly, Longmire's Rule 59(e) Motion objects that the April 20 Order's "statements at page 30 are contradicted by *Stallworth*." (Doc. 64, at 29.) She does not specify which of the numerous statements on page 30 of the April 10 Order she finds objectionable, much less identify which specific portions of the *Stallworth* decision she contends are at odds with such statements. The Court will not squander further judicial resources attempting to read Longmire's mind to guess what her dissatisfaction with that particular aspect of the summary judgment ruling might be.

**IV.     Conclusion.**

For all of the foregoing reasons, as well as those set forth in this Court's Order dated April 10, 2017, plaintiff's Motion to Alter or Amend Pursuant to Rule 59(e) (doc. 64) is **denied**.

DONE and ORDERED this 16th day of May, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[12] Curiously, Longmire goes on to argue that it was error for the April 10 Order to acknowledge her admission during the pre-disciplinary hearing that she understood her due process rights. (Doc. 64, at 29.) Her premise is, apparently, that she could not possibly have understood her due process rights without extensive formal training in the MCPB rules, so the Court should have rejected her own testimony – given under oath at the hearing – that she did understand those rights. This argument courts absurdity. Longmire's due process rights were enumerated in the December 10 Notice of Hearing. They were neither complicated nor couched in byzantine legal jargon. If she did not understand those rights, she could and should have said so. She did not. Instead, after being sworn to respond truthfully, Longmire answered "Yes" when asked if she understood the due process rights described in the disciplinary notice. (Doc. 18-2, at 5.) Longmire cannot cavalierly shrug off her sworn testimony by now complaining about lack of training on the MCPB Rules.